1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN N. HALL, et al.,<br><br>          Plaintiffs,<br><br>     v.<br><br>NORTH AMERICAN INDUSTRIAL<br>SERVICES, INC., et al.,<br><br>          Defendants.<br><br><br>NORTH AMERICAN INDUSTRIAL<br>SERVICES, INC.,<br><br>          Third Party Plaintiff,<br><br>     v.<br><br>AES MENDOTA, L.P.; AES<br>CORPORATION; and MENDOTA BIOMASS<br>POWER, LTD.,<br><br>          Third Party Defendants.<br><br><br>AES MENDOTA, L.P.; AES<br>CORPORATION; and MENDOTA BIOMASS<br>POWER, LTD.,<br><br>          Counter-Claimants,<br><br>     v.<br><br>NORTH AMERICAN INDUSTRIAL<br>SERVICES, INC.,<br><br>          Counter-Defendant. | 1:06-cv-00123 OWW SMS<br><br>**ORDER GRANTING THIRD PARTY DEFENDANTS AES MENDOTA L.P. AND AES CORPORATION MOTION FOR SUMMARY JUDGMENT AGAINST THIRD PARTY PLAINTIFF NORTH AMERICAN INDUSTRIAL SERVICES, INC. (DOC. 66) AND ORDER GRANTING THIRD PARTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFFS HALL (DOC. 59)** |

1

## I.  INTRODUCTION

This case arises out of an industrial accident that occurred on September 20, 2005 at the AES Mendota plant located in Mendota, California.  Third Party Defendant AES Mendota L.P. ("AES MLP") operates a power production plant at this site that uses biomass fuels and a turbine generator system to create electricity.  Before the accident, AES MLP hired Defendant and Third Party Plaintiff North American Industrial Services, Inc. ("NAIS"), a contractor specializing in blasting services, to conduct blasting operations for the purpose of unclogging one of the cyclones on the power plant premises that had become clogged with "slag."  As a result of the explosive de-slagging, fires broke out that caused severe burns and other injuries to Plaintiff Brian N. Hall ("Hall"), who was employed at the AES MLP plant.  Hall received workers' compensation benefits following the workplace accident.  On February 3, 2006, Plaintiff Brian Hall and his wife, Plaintiff Jean Hall, filed a complaint against NAIS alleging causes of action for strict liability-ultrahazardous activity, negligence, and loss of consortium. (Doc. 1.)

On January 16, 2007, NAIS filed a third party complaint against AES MLP and the AES Corporation, a New York corporation that is the parent corporation of AES MLP, asserting claims for indemnity, declaratory relief, and negligence on the grounds that AES MLP and AES Corporation agreed to assume all risk from the blasting and that any injury to Plaintiff Brian Hall was caused by their negligence.  (Doc. 32.)  Plaintiffs Brian and Jean Hall then filed a First Amended Complaint, naming the AES Corporation

2

as defendant in a personal injury action for injuries sustained by Hall in the September 2005 accident at the AES MLP plant.

Before the court for decision are two motions for summary judgment.  First, Third Party Defendant AES Corporation seeks summary judgment against the Plaintiffs on their premises and tort liability claims, asserting the claims fail because AES Corporation is not the owner, occupier or possessor of the premises at issue and that, as a parent entity, AES Corporation neither owes a duty to employees of its subsidiary AES MLP, including Hall, nor did it assume any such duty.  Second, Third Party Defendants AES MLP and AES Corporation seek summary judgment, or in the alternative, partial summary judgment on the following grounds: 1) as Hall's employer, California Labor Code sections 3600 et seq. and 3864 preclude suit by third party NAIS for contribution or indemnity against AES MLP, absent an express written indemnity agreement, under the exclusive remedy doctrine, which shields employers from tort liability for workplace injuries, and 2) as the parent corporation of AES MLP, AES Corporation neither owed nor assumed any duty to the employees of its subsidiary AES MLP.

Plaintiffs do not oppose AES Corporation's summary judgment motion.  (Doc. 74.)  Third Party Plaintiff NAIS opposes summary judgment, arguing that the section 3602 exclusive remedy provision does not apply to an independent third party negligence action against an employer and that there are genuine, material factual disputes as to who is Hall's employer and whether AES Corporation has acted in a manner that creates a duty to Hall.
///

1

## II.  **FACTUAL BACKGROUND**

2

**A.  The Parties.**

3  **Plaintiff Brian Hall worked at the AES MLP plant.  Defendant**
4  **NAIS (sued as North American Industrial Services, Inc., and North**
5  **American Services Group), d.b.a. North American Services Group,**
6  **is a New York corporation authorized to do business in**
7  **California.  (Doc. 32.)  Third Party Defendant AES MLP is a**
8  **California Limited Partnership doing business in Mendota,**
9  **California.  (Doc. 32 & 34.)  Third Party Defendant The AES**
10  **Corporation is a Delaware corporation doing business in**
11  **California.  Defendant NAIS has also sued Mendota Biomass Power,**
12  **Ltd., the former name of AES MLP.  (Third Party Defendants'**
13  **Statement of Undisputed Material Facts ("TSUMF") #6.)**

14

15  **B.  The Workplace Accident.**

16  **On September 20, 2005, Brian Hall suffered an industrial**
17  **accident at his worksite, the AES MLP plant.  (TSUMF #9.)  AES**
18  **MLP operates a power production plant in Mendota, California that**
19  **uses biomass fuels and a turbine generator system to create**
20  **electricity.  The turbines are powered by steam generated from**
21  **the use of Circulating Fluidized Bed technology to create high**
22  **temperature combustion required for steam production.  AES MLP**
23  **hired NAIS to conduct blasting operations to unplug two cyclones**
24  **located at the power plant that had become clogged with slag.**
25  **(TSUMF #17.)**

26  **On September 20, 2005, a fire started during blasting**
27  **operations and Plaintiff Brian Hall was allegedly injured while**
28  **helping to put the fire out.**

**4**

**C.**   **Duties and Responsibilities of the Parties**.

Of central concern is the issue of who is responsible for the September 20, 2005, fire at the plant.  Plaintiffs contend that NAIS's activities at the plant caused Hall's injuries and assert causes of action for strict liability - ultrahazardous activity, negligence, and loss of consortium.  Defendant NAIS contends that it was responsible only for setting the blasting explosives and that AES MLP and AES Corporation were responsible for safety measures, including preventing and containing any fires that might result from the blasting, and for maintenance of the plant's premises.  NAIS asserts that, if Plaintiffs succeed in their suit and obtain a judgment against NAIS, NAIS is entitled to indemnity or partial indemnity from AES MLP and AES Corporation based on comparative fault and contribution principles.

**1.**   **Evidence on the Question of Hall's Employer**.

Brian Hall was injured at his workplace, the AES MLP plant. (TSUMF #9.)  He occupied the position of Fuel Yard and Safety Team Leader at the plant.  (TSUMF #4; Third Party Defendants' ("TPD") Ex. C, Hall Depo. at 49.)  AES MLP employed David Righthouse as its plant manager at the time of the accident. (TSUMF #10.)  At oral argument, all parties agreed that AES MLP owns the plant and the real property on which it is situated.[1] They further agreed that AES MLP was a limited partnership owned

---

[1] In its opposition, NAIS disputed ownership of the plant. (Doc. 77.)  *See* infra at section II.C.3.

60 percent by its general partner, Thermendota, Inc., and other limited partners, who collectively own the remaining 40 percent interest.  AES MLP is a direct subsidiary of Thermendota, Inc.

Plaintiff Brian Hall testified that he interviewed with and was hired for his position at the AES MLP plant by plant manager David Righthouse.  (TSUMF #11.)  Hall reported directly to David Righthouse, Hall's immediate supervisor, during the time he worked at the AES MLP plant.  (TSUMF ## 13 & 16.)  Righthouse testified that he interviewed and hired Brian Hall and that Hall reported directly to him.  (TSUMF ## 11 & 13.)  After Hall's interview, Righthouse wrote Hall an employment offer letter on AES MLP letterhead, which Hall signed to accept the offer of employment.  (TSUMF #12; TPD Ex. D, Offer Letter; TPD Ex. F, Hall Depo. at 25-26.)  The letter references AES Mendota six times and advises "[t]his offer of employment is contingent upon a satisfactory employment physical...."  (TPD Ex. D.)  It also notifies Hall of the at-will nature of the position, stating "[a]s with all our staff, employment at AES Mendota is at-will and may be terminated, with or without cause, at any time by you or by the Company."  (*Id.*)

Righthouse had the authority to hire and fire Hall.  (TSUMF #14; TPD Ex. F, Hall Depo. at 37.)  Righthouse also controlled Brian Hall's day to day work at the plant.  (TSUMF #15; TPD Ex. F, Hall Depo. at 38.)

NAIS does not dispute any of these facts.  Rather, it presents other evidence to support its contention that Thermendota was Hall's employer.  NAIS points out that Hall admitted Thermendota was his employer in Plaintiff's Response to

1   Request for Admissions.  (NAIS's Ex. B.)  At oral argument,

2   Plaintiff's counsel explained that Hall gave deposition testimony

3   on more than one occasion in which he identified AES MLP as his

4   employer and believes the "admission" in Plaintiff's Response to

5   Request for Admissions was an error.  In deposition testimony on

6   October 20, 2006, when asked "Now, who did you go to work for?"

7   Hall answered "AES Mendota."  (NAIS Ex. D, Hall Depo. at 23.)  On

8   April 26, 2007, Hall testified the position he interviewed for

9   with Righthouse was at the AES Mendota plant.  (NAIS Ex. K, Hall

10  Depo. at 16.)  On September 18, Plaintiff filed a Motion for

11  Leave to Withdraw Admission.  (Doc. 87.)

12      NAIS points to the fact that Hall's paychecks and W-2s were

13  issued by Thermendota.  (NAIS's Undisputed Material Facts

14  ("NAUMF") ## 2-4; NAIS Exs. B and C.)  It also refers to an

15  invoice and accompanying check for repair services it says were

16  performed at the AES MLP plant, billed to AES MLP, and paid by

17  Thermendota to the vendor.  (NAUMF #8; NAIS Ex. F.)  Finally,

18  NAIS points to testimony from Hall and two other plant employees

19  who testified they were unclear about Thermendota's role, all of

20  which allegedly evidences a factual dispute about Thermendota's

21  status as an employer.  (NAIS Ex. D, Hall Depo. at 24-25; Ex. L,

22  Hibler Depo. at 30; Ex. M, Holbrook Depo. at 15-16.)

23      AES MLP disputes the legal significance of any confusion the

24  plant employees had about Thermendota's role.  It offers Hall's

25  additional testimony that no one ever told him he was employed by

26  Thermendota and he never met or knew anyone who was employed by

27  Thermendota.  (TPD Ex. F, Hall Depo. at 28-29.)

28  ///

                                  7

**2.   <u>Evidence of Payment of Workers' Compensation Benefits</u>**.

AES MLP asserts Hall receives workers' compensation benefits from its insurer.  NAIS offers evidence it claims shows that AES Corporation paid for Hall's workers' compensation benefits.[2]  A letter from Zurich American Insurance Company dated February 7, 2006, refers to AES Corporation as the insured and Brian Hall as the claimant.  (NAIS Ex. J.)  Claims services representative David Morse & Associates wrote a letter to NAIS on October 11, 2005, also referring to Zurich Insurance as the entity "who provided the workers' compensation insurance coverage 'for AES Corporation.'"  (NAIS Ex. I.)  In both Hall's application to the Workers' Compensation Appeals Board and a notice from that Board, AES Corporation is listed as Hall's employer.[3]  (NAIS Exs. G and H.)

AES MLP asserts that it is an additional insured on the Zurich policy and that AES Corporation is the first named insured as the parent corporation.  (Nevis Decl. ISO TPD Reply Brief, Ex. B.)  It contends that the fact that parent corporation AES Corporation is listed as the first named insured is of no legal significance to the employment relationship and that the workers' compensation insurer paid benefits to Hall on behalf of AES MLP

---

[2] **Third Party Defendants object to this evidence on hearsay grounds.  Because NAIS withdrew its allegation that AES Corporation is a possible employer of Hall, with respect to the consideration of AES MLP's summary judgment motion against NAIS this objection is moot.  The objection is addressed in relation to NAIS's claims against AES Corporation.  *See* infra at section IV.A., Evidentiary Disputes.**

[3] **Third Party Defendants object to this evidence on hearsay grounds.  This objection is moot for the reasons stated above.**

as additional insured.

### 3. Evidence of Degree of Separateness between AES MLP and AES Corporation.

NAIS refers to additional facts as evidence that AES Corporation and AES MLP do not retain distinct identities and AES MLP is merely a smaller part of an integrated AES Corporation whole.  First, it asserts that many employees of AES Corporation subsidiaries were confused about the AES corporate structure, including Hall.  When Hall was interviewed, Righthouse referred to AES Corporation as "a large multi-national energy producer, 30,000 employees, 27 countries," and did not distinguish between it and AES MLP.  (NAIS Ex. K, Hall Depo. at 16.)  Hall did not learn that a distinction between the two entities existed until a few months into his job and still does not understand the distinction.  (NAIS Ex. K, Hall Depo. at 24, 40.)  Hall testified that nobody used the term "AES Corp" or "AES LP" but rather, "it was just AES." (*Id*. at 25.)  In addition, other subsidiary employees do not understand how the various AES entities relate to each other.  (NAIS Ex. L, Hibler Depo. at 27-30; Ex. M, Holbrook Depo. 15-16; Ex. N, Righthouse Depo. at 84-85; Ex. O, Samson Depo. at 27-28; Ex. P, Mikolaycik Depo. at 45-47.)

NAIS relies heavily on interaction between employees at the various AES plants and interactions at the plants with one AES Corporation employee, Mark Woodruff.  Hall was interviewed for positions at both the Mendota and Delano plants.  (NAIS Ex. K, Hall Depo. at 17.)  Another AES MLP employee, David Samson, also interviewed at the Delano plant.  (NAUMF #41.)  Wayne Terry, an

AES Delano plant employee, visited the Mendota plant quarterly for site visits.  (NAUMF #42.)  Delano plant manager Doyle Hibler helped conduct the Hall accident investigation and had attended occasional meetings at AES Corporation headquarters in Arlington. (NAUMF ## 43 & 60.)  Plant managers in the division, of which AES MLP was a part, had weekly conference calls.  (NAUMF #45.)  AES Corporation Director of Subsidiaries, Mark Woodruff, had the capacity to fire plant managers, visited the Mendota plant at least once a year, and testified that AES Corporation sets performance-based standards for its businesses.  (NAIS Ex. U, Woodruff Depo. at 10, 15, 27.)

Third Party Defendants assert that all of this evidence is immaterial.  They point out that only one of the persons identified in interactions between AES entities is an AES Corporation employee, Mark Woodruff.  The AES corporate organizational chart places AES Corporation four entities removed from its subsidiary AES MLP.  (Vawter Decl. at ¶¶ 5-6, Ex. A.)

NAIS claims that AES Corporation owns the plant and the premises, relying on deposition testimony of Hall and Righthouse, who both stated they "thought" AES Corporation owned the plant. (NAIS Ex. K, Hall Depo. at 24; Ex. N, Righthouse Depo. at 14-15.) Permits for plant equipment separately list AES Corporation and AES MLP as the owner and various vendor reports were issued to both AES Corporation and AES MLP.[4]  (NAUMF ## 61-65; NAIS Exs. V-Y.)

---

[4] **Third Party Defendants object to the permits and reports listed in Exhibits V-Y on hearsay grounds.  *See infra* at Section IV.A., Evidentiary Disputes.**

1   Third Party Defendants deny that AES Corporation owned the
2   Mendota plant and premises and request judicial notice of the
3   Quitclaim Deed for the Mendota power plant recorded with the
4   Fresno County Recorder's Office on March 6, 2000, showing record
5   title in the name of Mendota Biomass Power, Ltd., AES MLP's
6   corporate predecessor.  (Doc. 83.)  Judicial notice of this
7   public record is taken pursuant to FRE 201.

8

9       4.   Evidence of Safety Operations.
10      AES MLP asserts that its employees created and maintained
11  the plant safety program and that AES Corporation had no role in
12  safety activities or maintenance of the plant premises.  Brian
13  Hall was the safety manager at the AES MLP plant and had
14  responsibility to "maintain the safety program on plant site" for
15  all personnel at the plant.  (TPD Ex. C, Hall Depo. at 52; Ex. E,
16  Righthouse Depo. at 30.)  Hall explained his duties were to
17  "implement and enforce the plant safety practices."  (TPD Ex. F,
18  Hall Depo. at 28.)  Brian Hall conducted the monthly safety
19  committee meetings at the plant.  (TPD Ex. H, Holbrook Depo. at
20  37; Ex. I, Samson Depo. at 32.)  Hall also conducted safety
21  training for employees.  (TPD Ex. H, Holbrook Depo. at 36.)  It
22  was mostly Hall who conducted contractor safety orientations.
23  (TPD Ex. C, Hall Depo. at 82; Ex. I, Samson Depo. at 33-34.)

24      Third Party Defendants refer to the fact that AES MLP hired
25  NAIS to conduct the blasting on the day of the accident, not AES
26  Corporation.  (TSUMF #17.)  NAIS does not dispute this assertion
27  and, in fact, acknowledges it in its Third Party Complaint.
28  (Doc. 32.)  AES MLP plant shift supervisor David Samson conducted

1  the safety orientation for NAIS on that day.  (TPD Ex. I, Samson

2  Depo. at 35; Ex. C, Hall Depo. at 82.)  Finally, Third Party

3  Defendants assert that no AES Corporation employee was present at

4  the plant on the day of the accident.  (TSUMF #21.)

5      NAIS contends that AES Corporation assumed a duty to AES MLP

6  plant employees because of its involvement with safety procedures

7  at the plant.  First, it asserts AES Corporation owns the Mendota

8  plant and premises.  This is disproved by the evidence of record

9  title in AES MLP.  AES MLP's sole ownership of the plant was

10  agreed to by all parties at oral argument and is undisputed.

11      NAIS argues that AES MLP did not have its own safety

12  training and points to Brian Hall's testimony that someone from

13  AES Corporation came out to give him training a few months after

14  he started his job at the plant.  (NAIS Ex. K, Hall Depo. at 40-

15  41.)  Hall also testified that a Safety Management System

16  document from AES Corporation "was there to provide an AES

17  presence within the specific safety programs...."  (*Id*. at 43.)

18  In its Response to Special Interrogatories, AES Corporation

19  states it "directed each operating business to formulate a safety

20  plan."  (NAIS Ex. T.)

21      NAIS relies on testimony from Paul Mikolaycik, who, NAIS

22  claims was responsible for the California AES plants, oversaw the

23  safety program for the Southland facilities, and provided

24  mentoring to safety coordinators.  (NAUMF #46.)  Mikolaycik did a

25  walk-through of the Mendota plant with Hall before the accident.

26  (NAUMF #52.)  Mikolaycik and Doyle Hibler from the Delano plant

27  went to the Mendota plant to help with the accident

28  investigation.  (NAUMF ## 43, 48.)

12

1    Third Party Defendants argue the Mikolaycik evidence is

2 immaterial.  He is not an employee of AES Corporation, nor is

3 Hibler.  (*See also* NAIS Ex. P, Mikolaycik Depo. at 15.)  They

4 dispute NAIS's characterization of Hall's testimony, pointing to

5 additional Hall testimony about AES Corporation that NAIS

6 ignores.  Hall testified that the training he received from the

7 AES Corporation employee after he started his job was about

8 "business code of ethics."  (NAIS Ex. K, Hall Depo. at 41.)  That

9 was the only instance he could recall when someone from Arlington

10 came out to give him training.  (*Id.*)  Hall could not recall the

11 person's name.  (*Id.*)  The relevant portions of the Hall

12 deposition about safety training and AES Corporation are:

13          Q: But other than that, did you receive any safety
           training — I'm sorry, did you attend any safety
14          seminars conducted by personnel of the AES Corporation?

15          A: Not that I recall.

16          Q: Do you know if AES Corporation personnel from
           Arlington ever conducted any safety meetings at the
17          plant?

18          A: I don't recall any while I was there.

19          Q: Do you know if the AES Corporation personnel from
           Arlington had any role in the day-to-day operations of
20          the plant?

21          A: My understanding was that with the SMS document was
           there to do was to provide an AES presence within the
22          specific safety programs, but I don't recall any
           directives coming from — directly from Arlington
23          directing us to do anything specific in regards to
           safety.
24
           Q: My question isn't just safety, but just in the day-
25          to-day operations. If I understand your answer, other
           than that SMS general guideline that you mentioned
26          earlier, you're unaware of AES Corporation having any
           role in the day-to-day operations of the plant,
27          correct?

28          A: Like I say, the chain of command is a little fuzzy.

13

1

I don't remember anyone calling me from Arlington
saying, "I'm so and so from AES safety, you need to do

2

this or I need this." I don't recall anything along
those lines.

3

Q: Do you know if AES Corporation conducted any safety

4

audits at the plant while you were there?

5

A: AES Corp?

6

Q: AES Corporation

7

A: No, I did all the safety audits while I was in
there.

8

Q: Do you know if AES Corporation conducted any safety

9

tours of the plant while you were there?

10

A: The only ones other than myself who did that, that I
know of, is when Doyle Hibbler would come up for plant

11

visits he would routinely take a look around. Also,
probably a couple weeks prior to my accident — I can't

12

remember his last name, Paul Micolaycik, who was
recently appointed as the California safety manager, he

13

came out and we did a walk-through together.

14

Q: Do you have an understanding of who his employer
was?

15

A: My understanding is his title was — he was

16

responsible for the California AES plants, director of
safety for either California or South Line plants,

17

along those lines. We'd only met once.

18

(NAIS Ex. K, Hall Depo at 43:5-44:25.)

19

20

   5.   No Indemnity Agreement.

21

   It is undisputed that there is no written or oral indemnity

22

agreement between AES MLP, NAIS, or any other party that pertains

23

to NAIS's blasting services that gave rise to the disputed

24

injury.

25

26

D.   Procedural History.

27

   On February 3, 2006, Plaintiff Brian Hall and his wife,

28

Plaintiff Jean Hall, filed this suit alleging three causes of

14

action: 1)strict liability-ultrahazardous activity, 2) negligence, and 3) loss of consortium.  (Doc. 1.)  In its answer, NAIS asserted various affirmative defenses, including comparative fault, offset of any recovery against it by workers' compensation benefits paid to Hall because of Plaintiff's concurring negligence, and that the exclusive remedy provision of the California workers' compensation laws bar any tort remedy against it because it was on the premises at the request of Hall's employer, which directly supervised NAIS's blasting activities. (Doc. 9.)

On December 11, 2006, NAIS filed a motion for leave to file a third-party complaint against AES MLP, AES Corporation, and Mendota Biomass Power, Ltd. (the latter is an entity no longer in existence and was the former name of AES MLP).  (Doc. 20.) Plaintiffs opposed the motion and AES MLP and AES Corporation also opposed their inclusion as third-party defendants.  (Doc. 24 & 25.)  On January 10, 2007, Magistrate Judge Snyder issued an order granting the motion.  (Doc. 31.)  While the ruling acknowledged Plaintiffs' argument that California workers' compensation law limits employer liability in cases of workplace injury, it also found "...the evidence submitted by the parties is conflicting with respect to the identity of the precise entity that employed Plaintiff Brian Hall at the time of the accident." (*Id.* at 6.)

On January 16, 2007, NAIS filed a Third Party Complaint against AES MLP and the AES Corporation, the parent corporation of AES MLP, asserting claims for indemnity, declaratory relief, and negligence.  In its first cause of action, NAIS claims

indemnity and to be held harmless by AES MLP and AES Corporation, or, in the alternative, that fault be apportioned between it and the Third Party Defendants.  (Doc. 32.)  The second claim is for declaratory relief and indemnity.  In the alternative, NAIS seeks a declaration that it is entitled to partial indemnity and contribution from AES MLP and AES Corporation in the event NAIS is found partially liable to Plaintiffs.  The third claim for negligence alleges that Third Party Defendants failed to take the proper preventive and safety measures to prevent and control fires at the plant resulting from the blasting, causing injury to Hall and damage to NAIS.

On March 16, 2007, Plaintiffs Brian and Jean Hall filed a First Amended Complaint, naming the AES Corporation as an additional defendant, asserting claims for premises liability and declaratory relief arising out of Hall's injuries sustained September 20, 2005 at the AES MLP plant.  (Doc. 41.)

On July 30, 2007, Third Party Defendant AES Corporation filed this summary judgment motion against Plaintiffs contending AES Corporation does not own, lease or possess the premises where the accident occurred; did not operate or otherwise control said premises; and has no duty as a parent entity to ensure the safety of its subsidiary's employees.  (Doc. 59.)  In their August 6, 2007 brief, Plaintiffs do not oppose the motion, noting that they know of "no facts that would serve as a basis for a premises liability cause of action against The AES Corporation."  (Doc. 74.)  Plaintiffs explain they filed the First Amended Complaint as a defensive act "solely to protect the plaintiffs' right of full recovery of their damages" in the event NAIS were to succeed

16

1  in its claims against AES Corporation.  (Doc. 74.)

2      Third Party Defendants filed a second motion for summary
3  judgment, or in the alternative, partial summary judgment against
4  Defendant and Third Party Plaintiff NAIS.  (Doc. 66.)  The second
5  motion is premised on AES MLP's contentions that as Hall's
6  employer, it is not a proper party to this suit under sections
7  3602 and 3684 of the California Labor Code.  As to AES
8  Corporation, Third Party Defendants argue summary judgment is
9  proper because as the parent corporation of AES MLP four entities
10  removed, AES Corporation never assumed or maintained
11  responsibility for safety, maintenance, or management at AES MLP
12  and had no involvement in the daily operations of the AES MLP
13  plant premises, or in the work performed by AES MLP's blasting
14  contractor, NAIS.  The parent corporation never owed or assumed
15  any duty to the employees of its subsidiary, AES MLP.

16      NAIS opposes summary judgment as to AES MLP on the grounds
17  that workers' compensation law does not preclude it as a third
18  party from suing an employer in tort and that, nevertheless, a
19  question of fact exists as to who is Hall's employer.  (Doc. 77.)
20  NAIS argues that AES Corporation, as the parent company and alter
21  ego of AES MLP, was responsible for fire prevention, safety and
22  suppression and failed to provide proper safeguards to minimize
23  the risks inherent in blasting.  NAIS maintains a question of
24  material fact exists as to whether AES MLP operated as a separate
25  entity and whether AES Corporation took affirmative steps to
26  provide a safe working environment at AES MLP such that it
27  assumed a duty to its subsidiary's employees.

28

17

III.  **STANDARD OF REVIEW**

Summary judgment is warranted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact."  Fed. R. Civ. Pro. 56(c); *California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998). Therefore, to defeat a motion for summary judgment, the non-moving party must show (1) that a genuine factual issue exists and (2) that this factual issue is material.  *Id*.  A genuine issue of fact exists when the non-moving party produces evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party.   *See Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252-56 (1986).  The evidence must be viewed in a light most favorable to the nonmoving party. *Indiana Lumbermens Mut. Ins. Co. v. West Oregon Wood Products, Inc.*, 268 F.3d 639, 644 (9th Cir. 2001), *amended by* 2001 WL 1490998 (9th Cir. 2001).  Facts are "material" if they "might affect the outcome of the suit under the governing law." *Campbell*, 138 F.3d at 782 (quoting *Liberty Lobby, Inc.*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).  If the moving party fails to meet this burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial."  *Nissan Fire & Marine*

18

*Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  However, if the nonmoving party has the burden of proof at trial, the moving party must only show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party has met its burden of proof, the non-moving party must produce evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party.  *Triton Energy Corp.*, 68 F.3d at 1221.  The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint.  *Devereaux*, 263 F.3d at 1076.

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23.

"In order to show that a genuine issue of material fact exists, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'"  *Rivera v. AMTRAK*, 331 F.3d 1074, 1078 (9th Cir. 2003) (quoting *Liberty Lobby, Inc.*, 477 U.S. at 249).  If the moving party can meet his burden of production, the non-moving party "must produce evidence in response....[H]e cannot defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements."  *Hernandez v. Spacelabs Med., Inc.*, 343

19

F.3d 1107, 1112 (9th Cir. 2003).   "Conclusory allegations unsupported by factual data cannot defeat summary judgment." *Rivera*, 331 F.3d at 1078 (citing *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001)).

## IV.   DISCUSSION

**A.   Evidentiary Disputes.**

    **1.   Donald Vawter Declaration.**

As a threshold matter, NAIS objects to many statements made in the Declaration of Donald C. Vawter, currently the Project Manager of Business Development at AES Corporation.  NAIS objects to Mr. Vawter's statement that Hall "was an employee of AES Mendota, L.P." and references to Hall's "employment at AES Mendota L.P." as conclusory, speculative, and lacking in personal knowledge.  (Vawter Decl. at ¶4.)  It further objects to Vawter's statement that "[t]he AES Corporation did not direct, control or manage the operations" at the AES Mendota plant as conclusory, vague, compound, speculative and lacking in personal knowledge.  (Vawter Decl. at ¶7.)  NAIS objects to Vawter's statement that "[t]he AES Corporation did not direct or exercise control over AES Mendota L.P. or its contractor, NAIS, with respect to the means, methods or operative details of the blasting operations wherein Brian Hall was injured."  (Vawter Decl. at ¶8.)  Finally, NAIS objects on the same grounds to Vawter's statement that "[t]he AES Corporation had no knowledge of any unsafe practices undertaken at AES Mendota L.P. nor did they have any employees on the site the day of plaintiff Brian Hall's accident."  (Vawter Decl. at ¶9.)

1    NAIS properly points out that these statements are partial

2    legal conclusions and the declarant's opinion which are subject

3    to exclusion.  This does not mean, however, that factual

4    assertions made by Vawter with personal knowledge of the subject

5    matter are inadmissible.  For example, Vawter makes statements

6    about the AES corporate structure and submits an organizational

7    chart.  Such factual assertions are admissible as are his

8    statements about control of activities at AES MLP, unsafe

9    practices, or the presence of the parent's employees at the

10   Mendota plant.

11   NAIS objects that Vawter's assertions are not based on his

12   personal knowledge.  His declaration states he was the president

13   of AES Mendota L.P. between July 2006 and mid-July 2007.  (Vawter

14   Decl. at ¶3.)  The accident that injured Brian Hall occurred

15   September 20, 2005.  He does not otherwise provide foundation for

16   how he knows what occurred at the AES MLP plant in September

17   2005.  His other non-conclusory statements are admissible.

18

19        2.   Hearsay Objections to NAIS Exhibits I, J, V-Y.

20   Third Party Defendants object on hearsay grounds to various

21   exhibits NAIS presents to support its contentions that AES

22   Corporation, not AES MLP, paid Hall's workers' compensation

23   benefits and AES Corporation is a possible employer of Hall.[5]

24   NAIS alleges Exhibits I and J show AES Corporation paid Hall

25   workers' compensation premiums because these letters from the

26   _____

27        [5] At oral argument, NAIS withdrew its allegation that AES
     Corporation was Hall's employer.  This narrows the possible
28   employers to two: Thermendota, Inc. or AES MLP.

insurer and its claims services representative list AES
Corporation as the "insured" under the policy number that applies
to Hall as a claimant.  As business records kept in the ordinary
course of business, these documents are admissible under Fed. R.
Evid. 803(6).

NAIS offers service vendor reports to both AES Corporation
and AES MLP to prove their inseparable identity.  (NAIS Exs. V-
X.)  The documents are provided to show that both AES Corporation
and AES MLP's names are listed in the same document, for identity
of business activities, and to establish plant ownership and
management.  To the extent they are offered for the purpose of
showing the two companies had such listings, these documents are
admissible as nonhearsay evidence.  Fed. R. Evid. 802.
Otherwise, they are admissible as business records under Fed. R.
Evid. 803(6).

NAIS offers Exhibit Y to show the entities are listed in
conflicting fashion on equipment permits at the Mendota plant, to
support their allegation that the names of AES Corporation and
AES MLP were used interchangeably and to show ownership of the
equipment.  These documents are admissible to the extent they are
offered for the nonhearsay purpose of establishing identity of
business activities.  Fed. R. Evid. 802.  Otherwise, they are
admissible public records under Fed. R. Evid. 803(8).

B.    **THIRD PARTY DEFENDANTS AES CORPORATION AND AES MENDOTA L.P.
      SEEK TO DISMISS THE COMPLAINT AS TO MENDOTA BIOMASS POWER,
      LTD.**

AES MLP and AES Corporation contend that Mendota Biomass

Power, Ltd. is the former name of AES MLP, that it no longer exists as an entity, and is an unnecessary party to this suit.  A true copy of the amendment to the limited partnership certificate filed with the California Secretary of State's office shows that Mendota Biomass Power, Ltd. changed its name to AES Mendota L.P. on June 4, 2002.  (TPD Ex. B.)  NAIS agreed to withdraw its claims against Mendota Biomass Power, Ltd. if it is established that the entity no longer exists.  (Doc. 77.)  At oral argument, the parties agreed this issue should be summarily adjudicated because the former Mendota Biomass Power, Ltd. is now known as AES Mendota L.P.

For the reasons set forth above, Third Party Defendants' motion for summary judgment as to Mendota Biomass Power, Ltd. is GRANTED and that party shall be dismissed from this case.

C.   <u>THIRD PARTY DEFENDANT AES CORPORATION AGAINST PLAINTIFFS ON THEIR PREMISES LIABILITY AND DECLARATORY RELIEF CLAIMS</u>.

AES Corporation moves for summary judgment on Plaintiffs' First Amended Complaint for premises liability and declaratory relief, arguing AES Corporation is not the owner, occupier or possessor of the AES MLP plant premises and, as a parent corporation, did not owe or assume any duty to the employees of its subsidiary AES MLP.  Plaintiffs do not oppose summary judgment, noting they only protectively filed this First Amended Complaint in response to NAIS's Third Party Complaint.  At oral argument, Plaintiffs agreed to summary adjudication of this issue as to their claims against AES Corporation.  The motion is GRANTED.

23

**D.   THIRD PARTY DEFENDANTS AES CORPORATION AND AES MENDOTA L.P.**

**AGAINST NAIS ON ITS INDEMNITY, DECLARATORY RELIEF, AND**

**NEGLIGENCE CLAIMS AS TO AES MENDOTA L.P.**

Third Party Defendants AES Corporation and AES MLP seek summary judgment on NAIS's Third Party Complaint against AES MLP, arguing that California workers' compensation law precludes suit against AES MLP as Hall's employer under the exclusive remedy provisions of sections 3602 and 3864 of the California Labor Code.  They contend undisputed evidence establishes that AES MLP is Hall's only employer.

NAIS rejoins that section 3602 does not preclude suit against an employer <u>by a third party</u> in a negligence action, but only precludes a tort action <u>by the employee</u> against the employer.  NAIS argues that the identity of Hall's employer is uncertain, presenting a triable issue of fact regarding whether AES MLP or Thermendota, Inc. is Hall's employer.[6]

**1.   General Principles of California Workers' Compensation Law.**

Under the California workers' compensation system, employers must secure workers compensation insurance for their employees. In turn, employees are compensated for injuries sustained during the course of employment under a highly regulated workers' compensation insurance system.  "The basic bargain underlying the workers' compensation system is that an injured worker forgoes

---

[6] **At oral argument, NAIS withdrew its contention that AES Corporation was Hall's employer.**

the pursuit of tort damages against her employer in return for an expeditious financial resolution of her workplace injury." *McKinnon v. Otis Elevator Co.*, 149 Cal.App.4th 1125, 1129-30 (2007).

The California Supreme Court identifies the purposes of the Workers' Compensation Law: "'(1) to ensure that the cost of industrial injuries will be part of the cost of goods rather than a burden on society, (2) to guarantee prompt, limited compensation for an employee's work injuries, regardless of fault, as an inevitable cost of production, (3) to spur increased industrial safety, and (4) in return, to insulate the employer from tort liability for his employees' injuries. [Citations.]'" *Privette v. Superior Court*, 5 Cal.4th 689, 697 (1993) (citing *S.G. Borello & Sons, Inc. v. Dep't. of Indus. Relations*, 48 Cal.3d 341, 354 (1989)).

Under California Labor Code section 3600 et.seq, all employees are automatically entitled to benefits for injuries "arising out of and in the course of employment."  Lab. Code § 3600.[7]  Section 3600(a) provides in relevant part:

> Liability for the compensation provided by this division, in lieu of any other liability whatsoever to any person...shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death, in those cases where the...conditions of compensation concur....

The "conditions of compensation" applicable in this case are found in section 3600(a)(1)-(3):

---

[7] Further statutory references are to the California Labor Code.

> (1) **Where, at the time of the injury, both the employer and employee are subject to the compensation provisions of this division. (2) Where, at the time of the injury, the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment.  (3) Where the injury is proximately caused by the employment, either with or without negligence.**

When a workplace injury occurs under § 3600 and a worker is entitled to workers' compensation benefits, these benefits "constitute the worker's exclusive remedy against his or her employer for injuries sustained in the course of employment. (Lab.Code, § 3602, subd. (a).)" *Employers Mut. Liab. Ins. Co. v. Tutor-Saliba Corp.*, 17 Cal.4th 632, 637 (1998)(citing *Phelps v. Stostad*, 16 Cal.4th 23, 30 (1997)).  Section 3602(a) states:

> Where the conditions of compensation set forth in Section 3600 concur, the right to recover such compensation is...the <u>sole and exclusive remedy of the</u> <u>employee</u> or his or her dependents against the employer, and the fact that either the employee or the employer also occupied another or dual capacity prior to, or at the time of, the employee's industrial injury shall not permit the employee or his or her dependents to bring an action at law for damages against the employer.

(Emphasis added.)

"[T]he legal theory supporting such exclusive remedy provisions is a presumed 'compensation bargain,' pursuant to which the employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability. The employee is afforded relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort." *Shoemaker v. Myers*, 52 Cal.3d 1, 16 (1990).

26

1          **2.   <u>Workplace Injuries Involving Third Parties</u>.**

2          **Although an employee receiving workers' compensation**

3   **benefits is barred from asserting civil liability claims against**

4   **his or her employer, the employee can still pursue a civil action**

5   **and recover a judgment from a negligent third party under section**

6   **3852 of the Labor Code.  *Privette*, 5 Cal.4th at 697; *Lopez v. CGM***

7   ***Development, Inc.*, 101 Cal.App.4th 430, 444 (2002).   Likewise an**

8   **employer who "pays or becomes obligated to pay workers'**

9   **compensation benefits to an injured employee may seek**

10  **reimbursement" from a negligent third party.   *Employers Ins.*, 17**

11  **Cal.4th at 637.**

12         **Reimbursement may be pursued in three ways: "the employer**

13  **'may bring an action directly against the third party (§ 3852),**

14  **join as a party plaintiff or intervene in an action brought by**

15  **the employee (§ 3853), or allow the employee to prosecute the**

16  **action himself and subsequently apply for a first lien against**

17  **the amount of the employee's judgment, less an allowance for**

18  **litigation expenses and attorney's fees (§ 3856)' [Citation.]"**

19  ***Id.* at 637-38 (citing *Associated Constr. & Eng'g Co. v. Workers'***

20  ***Comp. Appeals Bd.*, 22 Cal.3d 829, 833 (1978)).   An employer is**

21  **accountable for its own negligence in causing the employee's**

22  **injury, and therefore is only reimbursed for the amount by which**

23  **its compensation liability exceeds its proportional share of the**

24  **injured employee's recovery.   *Aceves v. Regal Pale Brewing Co.*,**

25  **24 Cal.3d 502, 512 (1979).   Any degree of employee fault in**

26  **causing the injury is not attributed to the employer for purposes**

27  **of reducing reimbursement. *Employers Ins*., 17 Cal.4th at 638.**

28         **It is also well established in employee negligence actions**

27

against third parties that, where an employer is concurrently negligent, any judgment against the third party is reduced by the amount of workers' compensation benefits received by the employee.  *See Witt v. Jackson*, 366 P.2d 641 (1961); *Aceves v. Regal Pale Brewing Co.*, 24 Cal.3d 502 (1979); *Engle v. Endlich*, 9 Cal.App.4th 1152 (1992); *Scalice v. Performance Cleaning Sys.*, 50 Cal.App.4th 221 (1996).  In *Witt v. Jackson*, decided when contributory negligence principles still applied, the California Supreme Court held a concurrently negligent employer was barred from reimbursement for any compensation benefits previously paid to the injured employee.  366 P.2d 641, 649-50 (1961).  The rationale behind this rule was that the employer should not be allowed to take advantage of its own wrongful conduct.  *Id.*  In declaring the third party's right to an offset, the *Witt* court held, "Since, however, the injured employee may not be allowed double recovery, his damages must be reduced by the amount of workmen's compensation he received."  *Id.* at 650.

   In *Associated Constr. & Eng'g Co. v. Workers' Comp. Appeals Bd.*, 22 Cal.3d 829 (1978), the California Supreme Court modified the *Witt* rule to apply in the comparative negligence context. The Court explained:

> When the issue of an employer's concurrent negligence arises in a judicial forum, application of comparative negligence principles is relatively straightforward. The third party tortfeasor should be allowed to plead the employer's negligence as a partial defense, in the manner of *Witt*. Once this issue is injected into the trial, the trier of fact should determine the employer's degree of fault according to the principles of *American Motorcycle*. The court should then deduct the employer's percentage share of the employee's total recovery from the third party's liability up to the amount of the workers' compensation benefits assessed against the employer.  Correspondingly, the employer

28

1    should be denied any claim of reimbursement or any lien
     under section 3856, subdivision (b) to the extent that
2    his contribution would then fall short of his
     percentage share of responsibility for the employee's
3    total recovery.

4    *Id.* at 842.

5        The Supreme Court restated the right of a defendant to

6    benefit from offset in *DaFonte v. Up-Right, Inc.*:

7        [A]n employee's damage judgment against third parties
         must be reduced by an amount attributable to the
8        employer's proportionate share of fault, up to the
         amount of workers' compensation benefits paid.  If the
9        employer's share of fault exceeded the benefits paid or
         owed, its claim for reimbursement, lien, or credit
10       should be denied.  If the benefits paid or owed
         exceeded the employer's share of fault, the employer
11       should recoup the excess only. [Citations.] Under this
         formula, third party defendants remained jointly and
12       severally liable to the injured employee for all
         damages attributable to the employer's fault which were
13       not covered by workers' compensation benefits.

14   2 Cal.4th 593, 599 (1992).

15

16       3.   Exclusive Remedy Provisions As Applied to Actions by

17            Third Parties Against Employers for Indemnity and

18            Contribution.

19       Third Party Defendants argue that sections 3602 and 3864 bar

20   NAIS's Third Party Complaint against AES MLP because of its

21   status as Hall's employer and the absence of a written indemnity

22   agreement.  Citing *Shoemaker* and other cases that address the

23   workers' compensation exclusive remedy provisions, they assert

24   that AES MLP paid workers' compensation benefits to Hall, is a

25   named insured under the workers' compensation policy, and has

26

27

28

29

1    fully met its statutory and contractual obligations.[8]   There is
2    no written indemnity contract between AES MLP and NAIS.   AES MLP
3    argues it is protected from further claims by NAIS whether based
4    in negligence, indemnity or declaratory relief.

5         NAIS counters that AES mistakenly applies section 3602's
6    exclusive remedy provisions to it as a third party.   Citing two
7    older California cases, *Del Monte Corp. v. Superior Court,* 127
8    Cal.App.3d 1049 (1982) and *City of Sacramento v. Superior Court*,
9    205 Cal.App.2d 398 (1962), NAIS contends an employer can be
10   joined in a third-party action by a cross-complaint and that
11   section 3602 only precludes suit against the employer by the
12   employee.

13        In *Del Monte*, the Court of Appeals held a third party
14   defendant properly joined the employer as a party to offset its
15   third party liability and could compel the employer's
16   participation in the suit.   127 Cal.App.3d at 1055.   *Del Monte*
17   found it would facilitate the third party defendant's "proof of
18   the employer's negligence where a finding of such negligence
19   would lead to a reduction in plaintiff's award by the amount of
20   compensation benefits paid..." *Id*.   An earlier analogous case,
21   *City of Sacramento* held that a third party can join an employer
22   in order to decrease any judgment against it by workers'
23   compensation benefits.   205 Cal.App.2d at 403-405.   It reasoned
24   "the defendant third-party, therefore, does have a vital interest

25

26        [8] Although NAIS argues AES Corporation paid Hall's benefits,
     that issue is not relevant to the inquiry between Thermendota and
27   AES MLP.   No party alleges Thermendota paid Hall's workers'
     compensation premiums.
28

1  in having the issue determined; because his monetary liability
2  will be reduced by the amount of said benefit payments upon proof
3  of the employer's concurrent contributing negligence."  *Id*.

4       While both these cases permitted a third party to join an
5  employer who had paid workers' compensation benefits in an
6  employee's action based on negligence brought by the employee
7  against the third party, neither ruling applied to the situation
8  where the third party seeks to join the employer for purposes of
9  indemnity and contribution as NAIS does here.  *Del Monte* and *City*
10 *of Sacramento* addressed the narrower question of whether a third
11 party can join the employer to assist in apportioning liability
12 between them for the injury; in the event they are found jointly
13 liable, any judgment against the third party awarded to the
14 plaintiff employee could then be reduced by the amount the
15 employer paid in workers' compensation benefits based on the
16 principle that an employee should not receive a double recovery.
17 *City of Sacramento* endorsed the principle that Labor Code section
18 3864 abolished a third party's right of implied indemnity against
19 the employer, but noted that section 3864 did not apply because
20 the third party was not seeking reimbursement from the employer.
21 205 Cal.App.2d at 405.  Here NAIS seeks not only declaratory
22 relief to establish its right to offset any employer-paid
23 workers' compensation benefits, but also indemnification or
24 contribution from AES MLP.

25       Both parties do not address the many later-decided cases
26 that have barred cross-complaints asserted by third parties
27 against employers where workers' compensation insurance is
28 provided by the employer and no written indemnity contract for

the third party exists.  As to declaratory relief actions, two
more recent California cases hold that a third-party defendant
seeking to raise an employer's concurrent negligence cannot bring
a separate action against the employer because the employer is
precluded from suit by the section 3602 exclusive remedy
provision.  Many other cases apply section 3864 to bar suits
against employers by defendant third parties whether a claim is
brought for indemnity or contribution.

*C.J.L. Construction*, *Inc. v. Universal Plumbing*, 18
Cal.App.4th. 376 (1993), involved a third party defendant's claim
for declaratory relief to determine the amount of its *Witt* offset
asserted by cross-complaint against an employer.  The court held
the exclusive remedy doctrine precluded a third party's suit
against the employer, expressly rejecting *Del Monte* and *City of
Sacramento*, because the purpose of the workers' compensation laws
to "insulate the employer from tort liability" would be
contravened.  *C.J.L.,* 18 Cal.App.4th. at 391.  The court
recognized that the issue of workers' compensation costs had
increased in importance since *Del Monte* and *City of Sacramento*
were decided and found that civil discovery rules provide
litigants with adequate means to discover and prove at trial
facts in the possession of non-litigants.  *Id*. at 392.  The court
also recognized that third party defendants can raise reduction
for such workers' compensation costs as an affirmative defense
without the need for the employer to undergo the expense of
participating in a civil suit without its consent.  *Id*.  On two
separate occasions the California Supreme Court has described in
dicta a third party's right to claim offset <u>as a defense</u>.  First,

in *Associated Constr.*, the Supreme Court described the
application of comparative negligence principles when a third
party seeks to reduce a judgment against it: "The third party
tortfeasor should be allowed to plead the employer's negligence
as a <u>partial defense</u>, in the manner of *Witt*."  22 Cal.3d at 842
(Emphasis added.)  Second, in *DaFonte*, 2 Cal.4th at 604, the
Court stated:

> [E]ven when the employer does not intervene to recoup
> benefits, the third party may assert the employer's
> negligence <u>as a partial defense</u>, ...

(Emphasis added.)

A year later *Difko Admin. v. Superior Court*, 24 Cal.App.4th
126 (1994), held that a third party defendant cannot file a
cross-complaint against the employer when seeking an offset for
employer negligence in a negligence action brought by the
employee.  The *Difko* court followed *C.J.L.* not *Del Monte.*  It
ruled that in all cases in which the employer did not seek
reimbursement from a third party for the workers' compensation
benefits provided to the employee (by filing an independent
action, joining in employee's action, or filing a complaint in
intervention in employee's action), the third party claiming a
right to offset based on the employer's concurring negligence can
do so only by raising the issue as a defensive matter.  *Difko*, 24
Cal.App.4th at 134-35.  *Difko* emphasized the "intent of the
statutory scheme is to 'insulate the employer from tort
liability.' [Citations.]  The rules operate to protect the
employer not only from actual tort liability, but, as a general
rule, from the expenses of that type of litigation."  *Id*. at 133.

Beyond declaratory relief actions to determine the right to

offset, a number of courts have applied Labor Code section 3864 to dismiss third party cross-complaints filed against employers seeking indemnity or contribution where no written indemnity agreement exists.  The latest case, *State of Cal. v. Superior Court (Glovsky),* 60 Cal.App.4th 659 (1997), applied section 3864 to bar third party lawsuits against employers, consistent with *Difko* and *CJL*.  Section 3864 provides:

> If an action ... prosecuted by the employee, the employer, or both jointly against the third person results in judgment against such third person, or settlement by such third person, the employer shall have no liability to reimburse or hold such third person harmless on such judgment or settlement in absence of a written agreement so to do executed prior to the injury.

Cal. Lab. Code § 3864.

*C.J.L.* and *Difko* both recognize that a defendant's liability is the same whether a cross-complaint is filed against the employer or not, *Glovsky* held that the third party could not seek indemnity or contribution from the employer by way of cross-complaint:

> ...Labor Code section 3864 prohibits suits against employers for reimbursement, or to enforce hold-harmless provisions, even where the employee, employer or both have prosecuted actions against the defendant. Labor Code section 3864 has been held to apply to suits for equitable indemnity (see *Privette v. Superior Court* (1993) 5 Cal.4th 689, 21 Cal.Rptr.2d 72, 854 P.2d 721), apportionment of fault, indemnity and declaratory relief (see *UpRight, Inc. v. Van Erickson* (1992) 5 Cal.App.4th 579, 7 Cal.Rptr.2d 34 and C.J.L. Construction, Inc.,, supra 18 Cal.App.4th 376, 22 Cal.Rptr.2d 360).

*Glovsky*, 60 Cal.App.4th at 664.

Glovsky is the latest in a line of Courts of Appeal cases that have construed section 3864 as eliminating an employer's

third party liability under an equitable indemnity theory based on the reasoning that the employer is responsible solely for workers' compensation and is otherwise immune from tort liability.   The underlying principle was explained in *Up-Right*:

> Section 3864 eliminates the employer's liability for equitable or implied indemnification of a third party tortfeasor...The Legislature enacted this section because implied indemnity imposed a greater burden on the employer than was contemplated under the workers' compensation system.   Otherwise, the employer's protection of a limit on the economic consequences of claims made under the system could be easily circumvented.

*Up-Right, Inc. v. Van Erickson*, 5 Cal.App.4th 579, 582 (1992); *see also Alameda Tank Co., Inc. v. Starkist Foods, Inc.*, 103 Cal.App.3d 428 (1980); *E.B. Wills Co. v. Superior Court*, 56 Cal.App.3d 650 (1976); *Pac. Gas and Electr. Co. v. Morse*, 6 Cal.App.3d 707 (1970).

The California Supreme Court has agreed that this view of section 3864 fits most squarely with the express purpose of the workers' compensation laws as a "compensation bargain" where the employer assumes liability for industrial injuries without regard to fault in exchange for limitations on the amount of the liability.   In *Employer's Ins.*, the court explained section 3864 in light of its legislative history:

> The employer can be sued apart from the employee by the third party for indemnification <u>if</u> the employer has executed an indemnification contract with the third party prior to the time of the injury. (§ 3864.)...Section 3864 'enforces the exclusivity of workers' compensation by precluding concurrent tortfeasors from seeking indemnification from negligent employers' absent a written agreement executed prior to the injury. [Citation.]   Prior to the statute's enactment in 1959, the employer was potentially liable not only for the injured employee's workers' compensation benefits, but also for additional damages awarded to the employee at common law. [Citation.] 'The

California legislature felt that <u>this double burden placed upon the employer was in contravention of the exclusive remedy theory</u> of the workmen's compensation statutes, and therefore enacted Labor Code section 3864 to <u>abolish any right to indemnity other than</u> by express contract. [Citation.]' (Emphasis added.)

17 Cal.4th at 638 (citing *Western S.S. Lines, Inc. v. San Pedro Peninsula Hosp.*, 8 Cal.4th 100, 113 (1994)).  *Privette* describes the employer's incentives under workers' compensation laws:

[A]n employer that provides compensation coverage has no further liability for workplace injuries to an employee.  Therefore, if a nonnegligent third party pays damages for an employee's injuries that are attributable in whole or in part to the negligence of the employer, the Act's limitations on employer liability <u>preclude the third party from obtaining equitable indemnity from the employer</u>.

5 Cal.4th at 698. (Emphasis added.)

All the recent California cases apply section 3602's exclusive remedy provisions and section 3864, in the absence of a written indemnity agreement, to preclude any further liability to an employer who has already paid workers' compensation benefits to any party, whether a third party or the employee.  Here it is undisputed that no express indemnity agreement, written or otherwise, exists between NAIS and AES MLP.  In this case, the only way NAIS can maintain its indemnity contribution claims against AES MLP is if AES MLP is <u>not</u> Hall's employer.  As Hall's employer, AES MLP is not a proper party to the employee's suit or to a third party indemnity/contribution claim.

4.   <u>Is AES MLP Hall's employer, or one of Hall's employers, as a matter of law</u>?

NAIS contends that Thermendota, Inc. is Hall's employer, not

AES MLP.[9]  It asserts that at minimum there is a question of fact as to whether Thermendota, Inc. or AES MLP is Hall's employer. While NAIS implies that only one of the entities can be Hall's employer, for purposes of this motion it is only necessary to establish whether it can be determined as a matter of law that AES MLP is Hall's employer.  Even if no disputed issue of material fact exists as to AES MLP's status as Hall's employer, summary judgment as to AES MLP is proper because sections 3602 and 3864 bar suit against it.

NAIS argues the Magistrate Judge's January 10, 2007, Order Granting Defendant's Motion for Leave to File a Third-Party Complaint should guide the assessment of the instant summary judgment motions because the order described a factual dispute as the reason why "it would be premature to . . . [deny] . . . Defendant's motion."[10]  (Doc. 20.)  Third Party Defendants correctly point out that the legal standard governing a Rule 56 summary judgment motion differs from the standard that governs impleader under Fed. R. Civ. P. 14.  That order was issued on January 10, 2007, more than six months before discovery in this case ended.  The order itself cites a lack of "developed evidence" and concludes the "claims sought to be set forth cannot

[9] NAIS clarified at the September 17 hearing that it no longer claims AES Corporation is Hall's employer.  In its opposition here, NAIS contends Thermendota was Hall's employer and argues that at minimum a question of fact exists as to whether AES MLP or Thermendota was Hall's employer at the time of the accident.

[10] NAIS's request for judicial notice of the existence of this order and two related pleadings is granted.  (Doc. 25, 31, 41.)

at this juncture be determined to be inappropriate...." (Doc. 20)(Emphasis added.)   The voluminous evidence presented for this motion is substantially different from that considered in deciding the Rule 14 motion.   The January 10, 2007 order is not precedential.   It does not control the determination of these summary judgment motions.

        5.   <u>The Test for Establishing the Employment Relationship</u>

        The existence of an employment relationship is usually a question of fact, particularly where the facts as to the employment relationship are in conflict.   *Gigax v. Ralston Purina Co.*, 136 Cal.App.3d 591, 598-99 (1982).   In *Schaller v. Industrial Accident Commission*, the court said:

> The question of whether a worker is an employee within the meaning of the Compensation Act...is referred to as a question of mixed law and fact to be proved like any other question. [Citations.] It is a question of fact...where the facts are in dispute. It becomes a question of law only when but one inference can reasonably be drawn from the facts.

11 Cal.2d 46, 50-51 (1938).

        The same tests used in determining who is the employer in master-servant cases are applied in the workers' compensation context.   *Gigax*, 136 Cal.App.3d at 599.   Courts have consistently recognized the most important factor to be considered in determining the employer-employee relationship is "<u>the right of control</u>" over the employee.   *Isenberg v. Cal. Employment Stabilization Comm'n,* 30 Cal.2d 34 (1947); *Borello*, 48 Cal.3d at 350;   *Grant v. Woods,* 71 Cal.App.3d 647, 653 (1977). "'[T]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the

manner and means of accomplishing the desired result....'"

*Borello*, 48 Cal.3d at 350 (quoting *Tieberg v. Unemployment Ins. Appeals Bd.*, 2 Cal.3d 943, 946 (1970)).  While emphasizing the right to control as the most significant consideration, California decisions identify secondary factors.  The right to discharge at will is "[s]trong evidence in support of an employment relationship."  *Tieberg*, 2 Cal.3d at 949-50 ("secondary elements").  Other factors include:

> (a) whether or not the one performing service is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or workman supplies the instrumentalities, tools, and the place of work for the persons doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by time or by the job; (g) whether or not the work is a part of the regular business of the principal; (h) whether or not the parties believe they are creating the relationship of employer-employee.

*Isenberg*, 30 Cal.2d at 39.

In the parent-subsidiary context, the same "right to control" test is used to determine whether a parent corporation is an employer of a subsidiary's employee.  *Gigax*, 136 Cal.App.3d at 601 (parent corporation was not the employer of its subsidiary's employees applying the "right to control" test).  In fact, "there is a strong presumption that a parent is not the employer of its subsidiary's employees."  *Laird v. Capital Cities/ABC, Inc.*, 68 Cal.App.4th 727, 737 (1998).


6.   As Applied to AES MLP

It is undisputed that AES MLP is a direct subsidiary of

1  Thermendota, Inc. and that Thermendota is the general partner of
2  AES MLP with a 60% ownership interest, while other limited
3  partners own a 40% interest.   Thermendota is the corporate
4  general partner of AES MLP, a limited partnership.   Thermendota's
5  status in relation to AES MLP's employees is properly determined
6  by the right to control test and the secondary factors listed
7  above.

8       AES MLP argues that the undisputed evidence establishes AES
9  MLP had the right to control Brian Hall's work and was Hall's
10 employer.   It asserts that Brian Hall worked at the AES MLP
11 plant, which was owned by AES MLP,[11] and was directed in his day-
12 to-day work by the AES MLP plant manager, David Righthouse.   It
13 is undisputed that Righthouse was employed by AES MLP.   AES MLP
14 argues that every aspect of Hall's employment, from his hiring to
15 his receipt of workers' compensation payments, with the exception
16 of wage payment, was directed by AES MLP, not Thermendota.   AES
17 MLP offers undisputed deposition testimony establishing that
18 plant manager David Righthouse interviewed and hired Hall and
19 authored the employment offer letter Hall received and signed,
20 which was written on AES MLP letterhead.   In unchallenged
21 testimony, Hall and Righthouse establish that Hall reported
22 directly to Righthouse, Hall's immediate supervisor.   AES MLP
23 argues that Righthouse had the authority to hire and fire Hall
24 and controlled the day to day operations of Brian Hall's work, as
25 well as plant operations.

26

27          [11] At oral argument, the parties agreed that AES MLP owns
28 the plant and the real property on which it is situated.

40

1      NAIS concedes all these facts, but points to Hall's

2  admission in the Plaintiff's Response to RFAs dated October 19,

3  2006, that Thermendota was his employer; that Thermendota issued

4  his paychecks; and that his W-2 forms for the years 2004 and 2005

5  were issued by Thermendota.   NAIS describes an invoice and

6  accompanying check paid by Thermendota, which it maintains was

7  issued for an expense at the AES MLP plant.   NAIS cites Hall's

8  testimony that he was not clear about Thermendota's role.   Other

9  AES MLP employees, including Doyle Hibler (former AES Delano

10  plant manager) and Mark Holbrook (former AES MLP plant manager)

11  were also uncertain about Thermendota's role at the AES MLP

12  plant.

13      To be relieved of the effect of Hall's admission that

14  Thermendota was his employer, Plaintiffs filed a Motion for Leave

15  to Withdraw Admission on September 18, 2007, one day after the

16  hearing.   Plaintiff's counsel stated in oral argument that Hall

17  now believes this admission was an error and that Thermendota is

18  not his employer.   Counsel explained that Plaintiff's response

19  was given before NAIS filed its Third Party Complaint joining AES

20  Corporation and AES MLP as parties to this suit.   Moreover, in

21  his deposition testimony on October 20, 2006, Hall stated that

22  AES MLP is his employer:

23          Q: ...Now who do you go to work for?

24          A: AES Mendota.

25          Q: And that's who you understood you were going to work

26          for, is that right, AES Mendota?

27          A: Yes.

28

41

(NAIS Ex. D, Hall Depo. at 23:16-20).

In his deposition testimony, Hall never identified Thermendota as his employer; rather, he testified he did not have any understanding of what Thermendota did, no one ever told him Thermendota was his employer, and he never met or knew anyone who worked for Thermendota.  (NAIS Ex. D, Hall Depo at 25; TPD Ex. F, Hall Depo. at 28-29.)

Hall's employment offer letter is also informative.  In addition to being issued on AES MLP letterhead, it refers to "AES Mendota" six times, stating at the outset "AES Mendota is very pleased with the results of your past interview...."  (TPD Ex. D.)  The letter also refers more than once to the position Hall is offered as one of "employment with AES Mendota":

> [t]his <u>offer of employment</u> is contingent upon a satisfactory employment physical, which can be scheduled by you at a date and location convenient to you. As with all our staff, <u>employment at AES Mendota</u> is at-will and may be terminated, with or without cause, at any time by you or by the Company.

(*Id.*)  Righthouse wrote, he "look[s] forward to welcoming you as a member of AES Mendota L.P." in closing the correspondence. (*Id.*)

NAIS never alleges or provides any evidence that any officer or employee of Thermendota had the right to control Hall and leaves unchallenged AES MLP's assertion that AES MLP plant manager Righthouse controlled Hall's day to day operations.  It concedes that Righthouse was Hall's supervisor, that Hall directly reported to Righthouse, and that Righthouse interviewed and hired him, wrote Hall's employment offer on AES MLP letterhead, and had the authority to hire and fire him.  NAIS

42

1  provides no evidence of direction from or activity by any
2  Thermendota officer or employee pertaining to operation of the
3  Mendota plant.

4      NAIS cites that Hall's paychecks and W-2s were issued by
5  Thermendota.  This does not negate facts that AES MLP managers
6  supervised Hall's daily activities and Righthouse's authority to
7  discharge Hall.  Wage payment by the corporate general partner of
8  a limited partnership employer is not sufficient to establish an
9  employment relationship.  It is only one factor for
10 "consideration in the overall view of the employment question."
11 *Brietigam v. Indus. Accident Comm.*, 37 Cal.2d 849, 854 (1951).
12 Even assuming arguendo that Hall and other plant employees were
13 confused about Thermendota's role does not establish that
14 Thermendota had a right of or ever exercised any control over
15 Hall, nor does it rebut the existence of and exercise by AES MLP
16 of its right of control over Hall and the Mendota plant.  The
17 uncertainty only corroborates AES MLP's employees' lack of
18 understanding and information about Thermendota's role in AES MLP
19 operations.  This supports the inference that Thermendota's
20 presence and participation in Mendota were so insignificant that
21 Thermendota played no role in the control of Hall's duties and
22 performance in the workplace.  Finally, one invoice paid by
23 Thermendota for an expense at the AES MLP plant is insignificant
24 and insufficient to establish control or an employer-employee
25 relationship.

26     The law is well-established that the right of control is the
27 "primary factor" in establishing the existence of an employment
28 relationship.  In over 30 depositions, NAIS has been unable to

43

1   find even one Thermendota officer or employee who ever interacted

2   with Hall, let alone who exercised authority or control over him.

3   No evidence has been presented that anyone from Thermendota

4   identified as a Thermendota employee was ever present at the AES

5   MLP plant or participated in any decisions regarding Hall's work,

6   activities, or AES MLP's operations.  Righthouse's authority to

7   discharge Hall is "strong evidence in support of an employment

8   relationship."  *Tieberg*, 2 Cal.3d at 949.  The best evidence NAIS

9   proffers to support its argument, wage payments to Hall by

10  Thermendota, is only a secondary factor, and is inconsequential

11  when considered in light of AES MLP's explanation that as general

12  partner, Thermendota handled salary payments and withholding for

13  the limited partnership's employees.  When considered with the

14  fact that NAIS does not have evidence to challenge any part of

15  the Righthouse-Hall relationship, the minimal evidence NAIS

16  presents as to Thermendota does not raise a disputed issue of

17  material fact that Thermendota had an employment relationship

18  with Hall.  There is a total absence of evidence that Thermendota

19  had any "right of control" or control over Hall.  The undisputed

20  evidence overwhelmingly establishes that AES MLP is Hall's sole

21  employer.

22      Summary judgment shall be GRANTED for AES MLP against NAIS

23  because, as a matter of law, AES MLP is Hall's sole employer.

24  AES MLP cannot be sued by NAIS for indemnity or contribution as

25  the sole employer that provided workers' compensation benefits to

26  its injured employee, Brian Hall.

27  ///

28  ///

1    **7.   Does a special employment relationship exist between**

2    **Thermendota, Inc. and AES Mendota L.P.?**

3    AES MLP asserts, *arguendo*, that if Thermendota is found to

4    have exercised a significant level of control over Hall, making

5    it his employer, then a dual employment relationship exists

6    between AES MLP and Thermendota as special and general employer,

7    respectively.  AES MLP argues in the event both are employers for

8    purposes of section 3602's exclusive remedy provision, then NAIS

9    cannot maintain suit against either entity.

10   The California courts apply the agency concept of "special

11   employment" to the workers' compensation system.  Case law

12   establishes that an employee may be deemed to have two or more

13   employers for purposes of the worker's compensation system.

14                 The possibility of dual employment is well recognized
                   in the case law.  Where an employer sends an employee

15                 to do work for another person, and both have the right
                   to exercise certain powers of control over the

16                 employee, that employee may be held to have two
                   employers - his original or "general" employer and a

17                 second, the "special" employer....  If general and
                   special employment exist, the injured workman can look

18                 to both employers for workers' compensation benefits.
                   If workmen's compensation is available, it constitutes,

19                 with an exception not pertinent here, the workman's
                   sole remedy against the employer.  Thus where there is

20                 dual employment the workman is barred from maintaining
                   an action for damages against either employer.

21

22   *Kowalski v. Shell Oil Co.*, 23 Cal.3d 168, 174-75 (1979)(internal

23   citations and quotations omitted); *see also Marsh v. Tilley Steel*

24   *Co.,* 26 Cal.3d 486, 492-93 (1980)*; Miller v. Long Beach Oil*

25   *Devel. Co.*, 167 Cal.App.2d 546, 549 (1959).

26   In this kind of relationship, the "general employer" lends

27   an employee to another employer and transfers some degree of

28   control over the employee's activities to the borrowing employer.

*Marsh*, 26 Cal.3d at 492.  The relationship that results between the borrowing employer and the employee is characterized as a "special employment" relationship.  *Id.*

Here, Hall was actually employed, directed, and controlled by AES MLP, a limited partnership.  As a general partner, Thermendota, a corporation, had the legal right to manage and operate the partnership.  However, there is no evidence that Thermendota did so in its own name or otherwise, as to Hall, who was offered employment by, directed and controlled by AES MLP and its plant manager Righthouse.  No evidence has been offered of a special employment relationship between AES MLP and Thermendota. There is no evidence that Hall worked for Thermendota or that Thermendota ever "loaned," "assigned," directed or controlled Hall to work for AES MLP or vice versa.  There is no evidence that Thermendota ever conducted any activity at the Mendota plant or that it ever utilized Hall's services in any way.  Thermendota had no direction or control over Hall.  Hall was never transferred to or borrowed by AES MLP from Thermendota for any purpose or that there was ever any period of "share[d] control." *Id.*  There is no evidence as to what business or activity Thermendota conducted.  The undisputed facts establish that Thermendota had no supervision or authority over Hall. Thermendota was not made a party to the lawsuit.  No special employment relationship can be proved in this evidentiary void.

The undisputed facts prove that AES MLP is Hall's employer, not Thermendota.  The lack of a special employment relationship has no bearing on the disposition of this matter as to AES MLP. AES MLP is entitled to summary adjudication that it was Hall's

only employer and Thermendota was neither a general or special employer of Hall or with AES MLP.

As Hall's employer who paid workers' compensation for Hall, and with whom NAIS had no written indemnity agreement, AES MLP is not a proper party to this suit.  Third Party Defendants' motion for summary judgment is GRANTED for AES MLP with respect to NAIS's Third Party Complaint for indemnity and/or contribution against AES MLP and against Thermendota.

E.   THIRD PARTY DEFENDANTS AGAINST NAIS'S THIRD PARTY COMPLAINT
     AS TO AES CORPORATION.

AES Corporation argues it is entitled to summary judgment because no triable issue of fact exists as to its relationship to or involvement with the AES MLP plant and premises where the accident occurred, nor did it owe any duty to plant employees. NAIS opposes, arguing AES Corporation is liable based on an alter ego theory and for its own negligence due to its active engagement in plant operations, ownership of the plant and premises, and assumption of duties with respect to safety operations.

NAIS argues that the evidence supports, or at least creates a question of fact regarding, its contention that AES Corporation and AES MLP are not separate, distinct entities due to AES Corporation's "active engagement" in plant operations and ownership of the plant and premises.  NAIS maintains the parent corporation is liable for the acts or omissions of its subsidiary.  NAIS also alleges that its evidence creates a question of fact as to whether AES Corporation owed or assumed a

47

1  duty to AES MLP employees because of its ownership of the plant

2  and premises and its direction and management of the safety

3  program at the AES MLP plant.

4

5      1.     <u>Alter Ego Theory</u>

6      To justify piercing the corporate veil under an alter ego

7  theory to hold a parent corporation liable for the acts or

8  omissions of its subsidiary, a plaintiff must show that there is

9  such a unity of interest and ownership between the two

10 corporations that their separate personalities no longer exist,

11 and that an inequitable result would follow if the parent were

12 not held liable.  *Mesler v. Bragg Management Co.*, 39 Cal.3d 290,

13 300 (1985).  The plaintiff must show "specific manipulative

14 conduct" by the parent toward the subsidiary which "relegate[s]

15 the latter to the status of merely an instrumentality, agency,

16 conduit or adjunct of the former...."  *Inst. of Veterinary*

17 *Pathology, Inc. v. Cal. Health Lab., Inc.*, 116 Cal.App.3d 111,

18 119-120 (1981).  Citing *Mesler*, 39 Cal.3d at 301, to explain that

19 the alter ego theory applies "'only in narrowly defined

20 circumstances and only when the ends of justice so require,'"

21 *Doney* holds:

22         Alter ego is essentially a theory of vicarious
           liability under which the owners of a corporation may
23         be held liable for harm for which the corporation is
           responsible where, because of the corporation's
24         utilization of the corporate form, the party harmed
           will not be adequately compensated for its damages.
25

26 33 Cal.App.4th 245, 249 (1995)(Italics ommitted).

27     In California, parent corporations cannot be held liable

28 under an alter ego theory for a subsidiary's conduct where the

subsidiary is shielded from the same action by the exclusive remedy provisions of the Workers' Compensation Act.  In *Doney*, heirs of an employee killed in a murderous office rampage sued the parent corporation and the subsidiary in tort after collecting workers' compensation benefits.  *Id*. at 247-48.  After summary judgment was entered in favor of the subsidiary based on the exclusive remedy provisions of the Workers' Compensation Act, the parent corporation later obtained summary judgment in its favor and the plaintiffs appealed.  *Id*.  The parent company was found not vicariously liable under the equitable doctrine of alter ego, where there is "no justification" for such liability when the workers' compensation had been paid by the subsidiary, an "equitable" scenario.  *Id*. at 252.

In *Waste Management, Inc. v. Superior Court*, 119 Cal.App.4th 105 (2004), the wife and children of a mechanic killed by a truck at work pursued a negligence action against the parent corporation of the employer after receiving workers' compensation benefits from the employer-subsidiary.  The court observed that while employers have a nondelegable duty to provide employees with a safe workplace, this duty is imposed only on the immediate employer or those who contract for his services but retain control over work.[12]  *Id*. at 110 (citing *Lopez v. Univ. Partners*, 54 Cal.App.4th 1117, 1126 (1997)).  Liability for failing to provide a safe working environment does not extend to an employer's parent corporation.

An employer's parent corporation is not responsible for

---

[12] As discussed above, here the employer is AES MLP.

49

1
2
3

> the working conditions of its subsidiary's employees
> based on the existence of the parent-subsidiary
> relationship. [Citations.]   Rather the parent
> corporation may be liable only if it assumes a duty to
> provide a safe working environment at the subsidiary's
> workplace.

4

5  *Id.*

6      In finding the parent company not liable for the acts or

7  omissions of its subsidiary, the court reasoned:

8
9
10
11
12

> To impose liability for an employee's injuries based
> solely on a parent-subsidiary relationship would result
> in treating the parent as an employer without providing
> it with the shield of employer immunity under workers'
> compensation laws. [Citation.]   Moreover, without a
> showing of an independent tort, plaintiffs would be
> able to obtain double recovery for the same act, a
> result that would undermine the central purpose of the
> workers' compensation system.

13  *Id.* at 110-11.

14      NAIS asserts that *Waste Management* does not apply because it

15  involves an employee's survivors filing a claim against the

16  employer's parent company, not an independent third party claim.

17  This argument is misplaced.   While *Waste Management* did not

18  involve a third party negligence claim, suit against the parent

19  corporation was precluded based on the exclusive remedy

20  provisions to prevent circumventing the purpose of the workers'

21  compensation laws if the parent company could be sued as the

22  surrogate, standing in the shoes of the employer.   This principle

23  that a third party cannot sue an employer or its parent company

24  in tort based on the exclusive remedy doctrine is equally

25  applicable here.   NAIS seeks to hold AES Corporation liable on an

26  alter ego theory, arguing AES Corporation is vicariously liable

27  for the torts of its subsidiary, an employer.   NAIS cannot hold

28  the employer's parent, AES Corporation, liable under an alter ego

1 theory because this simply substitutes an employer's parent,

2 which if a unity of interest and identity exists with its

3 subsidiary, is also an employer.

4

5      **2.**   **Parent Liability Based on Independent Acts**

6      An exception exists to the no-employer bar, if a parent

7 corporation assumes a separate duty to the third party. *Waste*

8 *Management*, 119 Cal.App.4th at 113-14; *Love v. Flour Mills of*

9 *America*, 647 F.2d 1058, 1063 (10th Cir. 1981); *Muniz v. National*

10 *Can Corp.*, 737 F.2d 145, 148 (1st Cir. 1984). A parent

11 corporation's liability for unsafe conditions at its subsidiary

12 depends upon whether it can be established that the parent owed a

13 separate duty of care "by affirmatively undertaking to provide a

14 safe working environment at the subsidiary" and then breached

15 this duty. *Muniz*, 737 F.2d at 148-49; *Waste Management*, 199

16 Cal.App.4th at 110 ("[A] parent corporation is not liable for

17 injuries of a subsidiary's employee in the absence of evidence

18 establishing a duty owed by the parent corporation to the

19 employee.") In *Gigax*, a subsidiary's employee was permitted to

20 maintain a separate action against the parent company based on

21 the parent's independent tort for products liability. 136

22 Cal.App.3d at 595-96. The *Waste Management* court explained the

23 *Gigax* decision: "...we held an employee of a subsidiary company

24 may sue a parent corporation who has designed and manufactured a

25 defective product which injured the subsidiary's employee, where

26 the employee had also received workers' compensation benefits

27 from his employer...." 119 Cal.App.4th at 112.

28      *Waste Management* explains that the parent corporation cannot

be held liable "unless the parent corporation's alleged acts of negligence are separate from those of the subsidiary."  In *Waste Management,* the parent did not direct the subsidiary's safety operations.  *Id*. at 111 ("The responsibility for worker safety belonged to and remained with [the subsidiary]...").  The parent corporation did not assume any duty toward the subsidiary's employees.  *Id*.  There, the plaintiffs simply attributed or imputed to the parent the negligent acts and omissions of the subsidiary, which were insufficient to create a separate duty of care.  *Id*. at 113.

The court in *Muniz* clarified the extent a parent must be involved in safety measures at the subsidiary to imply a duty by the parent corporation:

> Neither mere concern with nor minimal contact about safety matters creates a duty to ensure a safe working environment for the employees of a subsidiary corporation.  To establish such a duty, the subsidiary's employee must show some proof of a positive undertaking by the parent corporation.

737 F.2d at 148.  Even where a parent provided general safety guidelines to be implemented by local management, the *Muniz* court concluded there was no evidence that the parent corporation had assumed responsibility for safety at the subsidiary.  *Id*. at 149.

NAIS's evidence offers sparse support for its contention that AES Corporation was responsible for safety at the AES MLP plant.  NAIS claims that employees Paul Mikolaycik, Wayne Terry and Doyle Hibler, who worked at other AES plants, conducted site visits at AES MLP and helped with the accident investigation of the Hall incident, Mikolaycik performed one safety walk-through with Hall at the AES MLP plant prior to the accident and Terry

1  made regular site visits to review operations.  Mikolaycik and

2  Hibler went to the AES MLP plant to help with the Hall accident

3  investigation.  None of these individuals are employees of AES

4  Corporation; rather, they are employees of parallel AES operating

5  subsidiaries at the same level as AES MLP.  These employees'

6  interaction with the AES MLP plant does not constitute active

7  engagement by AES Corporation in assuming responsibility for

8  safety operations and assuring safety at the Mendota plant.

9       NAIS also argues that AES Corporation "directed each

10  operating business to formulate a safety plan" and that AES MLP

11  maintained a copy of AES Corporation's Safety Management Systems

12  document at the plant.  As in *Muniz*, a parent corporation that

13  provides general safety guidelines to its subsidiary does not

14  assume a duty to assure safety of the subsidiary's employees.

15  The evidence shows that AES Corporation directed all its

16  subsidiaries to "formulate a safety plan" which, by implication,

17  evidences that AES Corporation delegated any duty for safety

18  plans to its subsidiaries and was not involved in the writing or

19  creation of any safety plan at AES MLP.

20       NAIS points to Hall's testimony that an AES Corporation

21  employee came out to train him after he was hired.  NAIS does not

22  disclose that Hall's full answer to the question was, that the

23  training was for "business code of ethics," not safety.  NAIS

24  minimizes that Hall stated such training happened only once that

25  he recalled and he could not remember the AES Corporation

26  employee's name.  None of this evidence, even when taken

27  collectively, demonstrates an "affirmative undertaking" by AES

28  Corporation for safety at the AES MLP plant as required by *Muniz*

1   and *Waste Management*.

2       To the contrary, the Third Party Defendants' evidence shows
3   that AES MLP employees were responsible for safety at the Mendota
4   plant, and specifically Brian Hall, who was the Safety Team
5   Leader.  The uncontroverted testimony of Hall and plant
6   employees, David Samson and Mark Holbrook, establishes that Hall
7   ran the monthly safety meetings for employees at the Mendota
8   plant and it was mostly Hall who performed and was in charge of
9   safety training for any contractors who came onto the job site.
10  For the accident in this case, it is undisputed that AES MLP, not
11  its parent, AES Corporation, four entities removed, hired NAIS to
12  perform the blasting.

13      Hall confirms that AES Corporation was not involved with
14  safety at the plant when he answered "no," to the deposition
15  question whether he ever received safety training from AES
16  Corporation personnel or if such personnel ever conducted any
17  safety meetings at the plant, had any role in day-to-day
18  operations, or conducted any safety audits at the plant.  (NAIS
19  Ex. K., Hall Depo. at 43-44.)  Hall didn't recall any directives
20  coming from Arlington about safety, stating, "I don't remember
21  anyone calling me from Arlington saying 'I'm so and so from AES
22  Safety, you need to do this or I need this.' I don't recall
23  anything along those lines."  (*Id.*)  As Safety Team Leader, Hall
24  was in the best position to know of interest and involvement by
25  any person outside the plant, especially AES Corporation, in the
26  Mendota plant's safety operations.  Significantly, NAIS has been
27  unable to develop any evidence from AES Corporation that its
28  personnel performed any action or assumed responsibility for

safety at the Mendota plant.

Finally, evidence that both AES Corporation and AES MLP were named insureds under the same workers' compensation insurance policy does not prove identity between parent and subsidiary generally or with regard to workplace safety. *Gigax*, 136 Cal.App.3d at 604 (citing *Latham v. Technar, Inc.*, 390 F.Supp. 1031 (E.D. Tenn. 1974)) (where the court determined, even where parent and subsidiary shared same insurance policy and the parent name was on various insurance forms, the subsidiary was still separate and distinct in function and identity from the parent); *Latham*, 390 F.Supp. at 1037 ("...the presence of a common insurer as between the holding company and the wholly owned subsidiary does not automatically establish a single employer unit").

The evidence fails to establish a material issue of disputed fact that AES Corporation engaged in an "affirmative undertaking" to create a safe working environment at the AES MLP plant. The parent owed no duty to Hall or other AES MLP employees.

NAIS makes no suggestion as to what independent tort AES Corporation committed in this case that would impose liability on it as a parent. It is well-established that there must be an independent act by the parent to impose tort liability. As to the accident that injured Hall, NAIS has not described any act of AES Corporation that caused or contributed to Hall's injury. There is no independent basis for imposing liability on AES Corporation. Instead, NAIS simply vicariously attributes to AES Corporation any negligent acts and omissions of AES MLP. For example, in its Third Party Complaint, NAIS indiscriminately collectively alleges: "Third Party Defendants negligently and

1  carelessly failed to take the proper measures to prevent said

2  fires and did not properly contain said fires resulting in the

3  injury to Plaintiffs."  (Doc. 32.)  NAIS has offered no evidence

4  for holding AES Corporation liable for premise liability or

5  assumption of safety responsibility.

6      For the reasons set forth above, Third Party Defendants'

7  Motion for Summary Judgment against NAIS on its Third Party

8  Complaint is GRANTED as to AES Corporation.

9

10                         **V.   <u>CONCLUSION</u>.**

11      For all the reasons stated above, Third Party Defendants'

12  motion for summary judgment as to:

13      1.   Mendota Biomass Power, Ltd. is GRANTED.  Mendota

14  Biomass Power, Ltd., is dismissed from this case;

15      2.   Third Party Defendant AES Corporation is GRANTED; AES

16  Corporation was not Plaintiff's employer and did not own or have

17  any responsibility for the AES MLP Mendota plant premises, nor

18  did it assume any duty to ensure the safety of AES MLP plant

19  operations;

20      3.   NAIS, as to its Third Party Complaint for indemnity or

21  contribution is GRANTED, as the exclusive remedy bars of Labor

22  Code §§ 3602 and 3864 preclude liability against the employer AES

23  MLP for indemnity or contribution.

24

25  IT IS SO ORDERED.

26  Dated:   October 11, 2007          /s/ Oliver W. Wanger
                                    UNITED STATES DISTRICT JUDGE

27

28

                             56