Lowell T. Carruth, # 034065
Devon R. Darrow, #230539
McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
P.O. Box 28912
5 River Park Place East
Fresno, CA  93720-1501
Telephone:     (559) 433-1300
Facsimile:     (559) 433-2300

Donald W. Boyajian, Esq. (*Pro Hac Vice*)
Dreyer Boyajian LLP
75 Columbia St.
Albany, NY 12210
Telephone:     (518) 463-7784
Facsimile:     (518) 463-4039

Dana A. Fox, Esq., #119761
Leah Bolea, Esq., #242252
Lynberg & Watkins
888 S. Figueroa St., 16th Floor
Los Angeles, CA 90017
Telephone:     (213) 624-8700
Facsimile:     (213) 892-2763

Attorneys for Defendant, Third-party Plaintiff and
Counter-defendant NORTH AMERICAN
INDUSTRIAL SERVICES, INC. (sued herein as
NORTH AMERICAN INDUSTRIAL SERVICES,
INC., and NORTH AMERICAN SERVICES GROUP)

(SPACE BELOW FOR FILING STAMP ONLY)

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| BRIAN N. HALL; JEAN M. HALL,<br><br>            Plaintiffs,<br><br>     v.<br><br>NORTH AMERICAN INDUSTRIAL SERVICES, INC.; NORTH AMERICAN SERVICES GROUP; DOE 1 THROUGH DOE 100,<br><br>            Defendants. | Case No.  1:06-CV-00123-OWW-SMS<br><br>**NORTH AMERICAN'S OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE EXPERT OPINION TESTIMONY BY KIMBLE J. CLARK, JOHN P. MOLDESTAD, AND DOUGLAS OLSON**<br><br>Action Filed:     February 3, 2006<br>Trial Date:        October 30, 2007 |
| AND RELATED COUNTER-ACTIONS. | |

Defendant, Third-party Plaintiff and Counter-defendant NORTH AMERICAN INDUSTRIAL SERVICES, INC. (sued herein as NORTH AMERICAN INDUSTRIAL SERVICES, INC., and NORTH AMERICAN SERVICES GROUP) (hereafter referred to as "NORTH AMERICAN"), respectfully submits this Opposition to Plaintiffs BRIAN N. HALL'S AND JEAN M. HALL'S (hereinafter referred to as "Plaintiffs") Motion in limine to exclude reference to the opinions of NORTH AMERICAN'S experts, Kimble J. Clark, Ph.D., with respect to the first, sixth, ninth, and tenth opinion set forth in his written report, of Douglas B. Olson, Ph.D., with respect to the first, sixth, and fourteenth opinions in his written report, and John P. Moldestad with respect to both of his opinions set forth in his report.

Said experts are absolutely qualified as experts under Federal Rule of Evidence 702, the opinions to be rendered regarding custom and practice do not conflict with any statutes Plaintiffs have placed at issue, the necessary foundation has been laid in regarding to rendering said opinions, and adequate statements of basis and reasons for the opinion have, in fact, been given. Thus, the Court should deny Plaintiffs' Motion in Limine.

## I.

## LAW AND ARGUMENT

**A.   Standards For Ruling On Motions In Limine.**

NORTH AMERICAN refers the Court and counsel to the discussion of the standards for ruling on motions in limine contained in NORTH AMERICAN'S Motion in Limine No. 1. For the sake of brevity, NORTH AMERICAN incorporates same herein.

**B.   North American's Experts Are Qualified To Render The Opinions Contained In Their Written Reports.**

Before expert opinion testimony may be offered, the expert must be shown to have "special knowledge, skill, experience, training, or education" about the subject involved. (Ca Evid. § 720(a); Hyman v. Gordon (1973) 35 Cal.App.3d 769, 774.) There is no hard and fast rule for qualification of experts. The determinative issue in each case is whether the witness has sufficient knowledge, skill or experience in the field so that his or her testimony would be likely

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
5 River Park Place East
Fresno, CA 93720-1501

2

**OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE EXPERT OPINION TESTIMONY BY KIMBLE J. CLARK, JOHN P. MOLDESTAD, AND DOUGLAS OLSON**

to assist the jury in its search for the truth. (Mann v. Cracchiolo (1985) 38 Cal.3d 18, 37-38, 210.) In fact, the witness' "special" knowledge, skill, etc. may be shown by any otherwise admissible evidence, including the witness' own testimony. (Ca Evid § 720(b).)

The court has broad discretion to determine an expert witness' qualifications. (Pfingsten v. Westenhaver (1952) 39 Cal.2d 12, 20.; People v. Stanley (1984) 36 Cal.3d 253.) The court's ruling will not be disturbed on appeal unless a "manifest abuse of discretion" is shown. (Miller v. Los Angeles County Flood Control Dist. (1973) 8 Cal.3d 689, 701; Korsak v. Atlas Hotels, Inc. (1992) 2 Cal.App.4th 1516, 1523.)

If the witness is shown to have "special" knowledge of the subject, it is an abuse of discretion to refuse to permit him or her to testify as an expert: "If a witness has passed this threshold, the question of the degree of expertise or knowledge goes to the weight of the testimony rather than to its admissibility." (Jeffer, Mangels & Butler v. Glickman (1991) 234 Cal.App.3d 1432, 1443-1444; Miller v. Silver (1986) 181 Cal.App.3d 652, 660.)

The court's determination that a witness is qualified as an expert on a particular subject establishes the admissibility of the expert's opinion.  However, the weight of that opinion is left to the jury; and jurors usually consider the witness' qualifications in deciding this matter . (Kastner v. Los Angeles Metropolitan Transit Auth. (1965) 63 Cal.2d 52; Daum v. SpineCare Med. Group, Inc. (1997) 52 Cal.App.4th 1285, 1304.)

**1. Dr. Clark Is Qualified To Render An Opinion Regarding Fault And Causation, His Opinions Do Not Contradict Legal Authority, And He Has Established A Clear Foundation For His Opinions Regarding Gotaverken's Design Of The Plant.**

**a. Dr. Clark Has The Necessary Qualifications To Assess The Relative Fault Or Causation For The Accident.**

Dr. Clark has an extensive education and professional background as set forth in his resume attached to his written report.  As indicated in Plaintiffs' Motion and in Dr. Clark's written report, Dr. Clark has "over forty years of experience in the fields of energy systems,

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

3

**OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE EXPERT OPINION TESTIMONY BY KIMBLE J. CLARK, JOHN P. MOLDESTAD, AND DOUGLAS OLSON**

combustion, process and steam plant equipment, fire and explosion origin and cause and failure analysis." (See Dr. Clark's Resume attached as Exhibit "A" to the Declaration of Lowell Carruth (hereafter the Carruth "Dec.")  Plaintiffs have failed to point out that Dr. Clark also has conducted many investigations into the "origin and cause of complex fires and explosions in chemical process plants, industrial facilities and commercial and residential buildings." (Ibid.)  Dr. Clark's specialties include "heat transfer, fluid mechanics, thermodynamics, and combustion." (Ibid.)

In his deposition, Dr. Clark testified that he did, in fact, analyze NORTH AMERICAN'S actions on the day of the accident and ruled out that NORTH AMERICAN did not do anything wrong as far as Plaintiff Brian Hall's injures are concerned. (See Clark Deposition at 47:2-5 attached as Exhibit "B" to the Carruth Dec.)  That was the issue that Dr. Clark was retained to testify about, not whether the blasters did anything wrong that did not cause injury to Brian Hall. Dr. Clark stated that "as far as Mr. Hall's injures are concerned" any actions wrongfully taken by NORTH AMERICAN is "inconsequential" and were not the cause of Brian Hall's injuries. (Id. at 47:19-48:8)

Plaintiffs claim that Dr. Clark is not qualified to express opinions about the relative responsibilities, duties, shortcomings of the blaster versus the plant because he has never analyzed the conduct of blasters employed to work with boilers, heaters, or furnaces.  This is a misconstrued effort by Plaintiff.  Dr. Clark testified that he has never analyzed the conduct of blasters working with boilers, heaters, or furnaces "to this extent" and that he has reviewed shotgun blasting where blasters blasted slag of boilers. (See true and correct copy of Dr. Clark's deposition 83:10-19 attached as Exhibit "B" to the Carruth Dec.)  Dr. Clark simply stated that this was the first case where he dealt specifically with the conduct of a blaster versus the conduct of the plant that hired it. (Id. at 83:10-23)

Also, it is the jury's role to make credibility determinations and it should be presented

4

**OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE EXPERT OPINION TESTIMONY BY KIMBLE J. CLARK, JOHN P. MOLDESTAD, AND DOUGLAS OLSON**

with all of the evidence related to the qualifications and background of an expert. (Cal. Evid. Code §312.) The weight of Dr. Clark's opinion is left to the jury; and jurors usually consider the witness' qualifications in deciding this matter . (<u>Kastner v. Los Angeles Metropolitan Transit Auth</u>. (1965) 63 Cal.2d 52; <u>Daum v. SpineCare Med. Group, Inc.</u> (1997) 52 Cal.App.4th 1285, 1304.) Thus, NORTH AMERICAN'S expert should be allowed to testify regarding causation and fault.

        **b.    Dr. Clark's Opinions Numbered 1 And 6 That Are Based Upon Industry Custom And Practice Do Not Conflict With Any Statutes Plaintiffs Have Placed At Issue.**

Under his first opinion in his written report, Dr. Clark opined that the root of Plaintiff Brian Hall's burn injuries was not related to any act of NORTH AMERICAN. Rather the cause is a combination of (a) deficiencies in the AES/Mendota safety training and procedures and plant operation and maintenance procedures and (b) deficiencies in the boiler plant design and maintenance procedures provided by Gotaverken.

Also, in his written report, under his sixth opinion, Dr. Clark indicated that it was AES Mendota, L.P.'s responsibility to prepare the plant site before detonation of the explosive charge and perform follow up activity immediately after the detonation of the explosive charge. In essence, Dr. Clark opined that AES was to be in control before and after the blast. (Clark Deposition at 25:17-23 attached as Exhibit "B" to the Carruth Dec.)

In their Motion in Limine, Plaintiffs list the various code sections which their experts opine are applicable to the accident at issue (including Labor Code Section 6710, Section 5237 of Title 8.) Plaintiffs allege that these code sections define the responsibilities of those who conduct a blasting operation. Plaintiffs then claim that, instead of relying upon these code sections, Dr. Clark relied upon custom and practice in the industry and that he is "ignorant" of the multiple specific regulatory requirements applicable both to blasters and plant personnel.

First, Plaintiff again misconstrues Dr. Clark's testimony. Dr. Clark did not testify that he

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

5

**OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE EXPERT OPINION TESTIMONY BY KIMBLE J. CLARK, JOHN P. MOLDESTAD, AND DOUGLAS OLSON**

looked at the industry standard and nothing else. What he actually said was that he does not believe that there are any regulations that state who has the ultimate responsibility in these types of situations. Therefore, Dr. Clark stated that he would not point to any specific legal authority regarding same. (Clark Deposition at 21:22-22:13 attached as Exhibit "B" to the Carruth Dec.) It is baffling how Plaintiff can equate this statement with "ignorance" of the appropriate code sections.

Next, Dr. Clark's opinions regarding industry standard do not relate to the code sections set forth by Plaintiffs in regards to the conduct of a blasting operation. Expert witnesses are permitted to offer an opinion about whether a party's conduct complied with industry standards. (Davis v. Mason County (9th Cir. 1991) 927 F.2d 1473, 1484-1486; TCBY Systems, Inc. v. RSP Co., Inc. (8th Cir. 1994) 33 F.3d 925, 929.) Where the issue is one of negligence in the performance or failure to perform some act, it is clear that evidence of the ordinary practice and custom which is generally followed in the performance of such act under the same or similar circumstances is competent. (Burke v. John E. Marshall, Inc. (1940) 42 Cal. App. 2d 195, 203-204.) While custom has been held admissible in negligence cases to aid a jury in determining whether particular conduct measures up to the applicable legal standard, it is not admissible to establish a standard of care which conflicts with a standard fixed by statute. (Ortega v. Garner (1963) 218 Cal. App. 2d 823, 827 [Emphasis Added].) In other words, evidence of custom and practice may not be used to contravene a statutory duty of care. ( Ortega v. Garner, 218 Cal.App.2d 823, 827; Hurtel v. Albert Cohn, Inc. (1963) 5 Cal.2d 145, 148-149 [Emphasis Added.)

None of the code sections cited by Plaintiffs define all of the issues regarding responsibilities of the blaster vs. the plant., deficiencies in safety training and procedures, plant operation and maintenance, deficiencies in boiler plant design, and maintenance procedures.

Also, none of the codes cited by Plaintiffs address who has the ultimate responsibility to prepare the plant site before detonation of the explosive charge and perform follow up activity immediately after the detonation of the explosive charge.  Therefore, it is absolutely appropriate for Dr. Clark to rely upon custom and practice in the industry especially given the fact that the above stated code sections are not applicable to the issues set forth in this case.

Dr. Clark testified that there absolutely is an industry standard regarding how power plant operation and maintenance is conducted. (Clark Deposition at 22:5-21 attached as Exhibit "B" to the Carruth Dec.)  Although Dr. Clark stated that there was no legal authority that was on point, he did rely upon AES safety manuals regarding the issue of who was in control of the blasting operation.  Dr. Clark opined that it was made clear in six or seven places in the AES' safety manual that AES personnel are in control of safety at all times, even when contractors are on board and no matter what the subcontractors are doing on the plant.  AES was supposed to train their subcontractors, familiarize all subcontractors with all foreseeable hazards, review the subcontractors' procedures and approve same. (Id. at 19:20-20:12, 23:1-4, 74:5-11)  He testified that after the explosive is detonated the plant personnel take care of everything else, cleaning up the slag, moving it away, the disposal, etc. (Id. at 75:1-5)  Given that there was no legal authority on point, Dr. Clark properly based these opinions on his familiarity and experience with how power plant operation and maintenance is conducted in addition to what was set forth in AES' safety manuals. (Id. at 21:5-18)  In fact, Dr. Clark opined that custom and industry practice is that subcontractors are always under jurisdiction of plant management. (Ibid.)

Dr. Clark testified that when blasters come onto a site such as the AES Mendota plant, they have no way of knowing the condition of the plant, how much unburned fuel is accumulated, what hazards potentially exist in the cyclone, what the operation was like in the previous days, etc. (Clark Deposition at 22:14-25; 75:6-14 attached as Exhibit "B" to the Carruth Dec.)  This

7

**OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE EXPERT OPINION TESTIMONY BY KIMBLE J. CLARK, JOHN P. MOLDESTAD, AND DOUGLAS OLSON**

testimony in no way suggest that the blasters were incompetent. Dr. Clark made it clear that NORTH AMERICAN is not a boiler specialist, but a blasting specialist. (Id. at 75:6-15)

Plaintiff relies upon Elsner v. Uveges (2004) 34 Cal. 4th 915, 939 when claiming that Dr. Clark cannot base his opinion entirely upon asserted industry custom and practice. This is not the holding in Elsner. The rule under Elsner only requires the exclusion of custom and practice testimony when it is at odds with Cal-OSHA provisions. (Elsner v. Uveges (2004) 34 Cal. 4th 915, 940.) But the rule is subject to a limiting principle: it applies only to those statutes and ordinances that actually set out a duty or standard of care. (Ibid.) Also, unlike AES in this matter, in Elsner, the general contractor acknowledged that he was directly responsible for supervising and controlling the work in order to ensure that required safety practices were followed. (Id. at page 924.) Here, as stated above Dr. Clark testified that there are no regulations or statutes on point. Therefore, his testimony regarding custom and practice in the industry is absolutely applicable in this matter.

As the Court may be aware, the procedural facts of this case are detailed and extremely convoluted. There are experts on all sides with different opinions regarding the cause of the accident and the party who is liable or ultimately liable for same. In the case at bar, the industry custom is directly relevant to, among other things, the knowledge of AES regarding the plant and AES responsibility for the overall control of the plant prior to, during, and after the blasting. Such reference and testimony should not be precluded.

        **c.    Dr. Clark Has, In Fact, Established A Proper Foundation For His Opinions Regarding Fault On The Part Of Gotaverken.**

Under his ninth opinion of his report, Dr. Clark opined that the boiler/cyclone design by Gotaverken Energy is deficient for various reasons. Under his tenth opinion, Dr. Clark stated that the operating and maintenance instructions provided by Gotaverken for the boiler and cyclones are completely silent on how to handle plugged cyclones and that this is a deficiency since

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
5 River Park Place East
Fresno, CA 93720-1501

8

**OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE EXPERT OPINION TESTIMONY BY KIMBLE J. CLARK, JOHN P. MOLDESTAD, AND DOUGLAS OLSON**

plugged cyclones are foreseeable. Dr. Clark has the qualifications and has laid the proper foundation in providing this opinion.

Dr. Clark has investigated equipment design defects and improper operation which cause burner and structural failures and fires and explosions. He has developed methods to prevent thee failures and has developed equipment including utility boilers, heat recovery boilers, and industrial furnaces and boilers. (See Dr. Clark's resume attached as Exhibit "A" to the Carruth Dec.) He has analyzed and tested synthetic and biomass fuels in engines, turbines, and boilers and has analyzed heat and mass balances for combined cycle power plants. (Ibid.)

Plaintiffs allege that Dr. Clark's opinions are entirely insufficient to make a prima facie case of fault under any products liability theory. However, expert testimony is typically required to establish whether an allegedly defective product complied with industry standards. (Leverette v. Louisville Ladder Co. (5th Cir. 1999) 183 F.3d 339, 341.) Therefore, Dr. Clark should be allowed to provide his opinions regarding same.

In their Motion in Limine, Plaintiffs claim that Dr. Clark was not successful in obtaining more information on the design of the plant by Gotaverken beyond what he could see in his plant visit and drawings signed by Gotaverken. Plaintiffs claim that Dr. Clark admitted that he gave up on the design issue and relied upon what he saw while visiting the plant and various documentation provided to him. Plaintiff again misconstrues Dr. Clark's testimony. Dr. Clark did not testify that he "gave up" on the Gotaverken issue. He stated that Gotaverken did not exist any longer as a separate corporate entity, that it had been bought out by a Canadian company, that the paper trial regarding said entity "faded" and he could not locate any office that seemed to be active that did design work on the boilers. (Clark Deposition at 33:3-9 attached as Exhibit "B" to the Carruth Dec.)

Next, Plaintiff claims that Dr. Clark does not know if any changes were made to the plant

9

**OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE EXPERT OPINION TESTIMONY BY KIMBLE J. CLARK, JOHN P. MOLDESTAD, AND DOUGLAS OLSON**

MCCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

since the original construction. This is not what Dr. Clark testified to. Dr. Clark stated that, out of all the documents that were produced by AES, <u>he did not note any changes</u> made to the design of the plant. (Clark Deposition at 35:20-24 attached as Exhibit "B" to the Carruth Dec.) Also, this assertion is irrelevant as Dr. Clark performed a site inspection at the plant which assisted in forming his opinions regarding various defects in its design.

Lastly, Plaintiffs claim that the main problem with Dr. Clark's opinions is that it is entirely unclear what Gotaverken's role was for purposes of assessing any fault on it in this case. Dr. Clark was quite clear in expressing his opinion that he was critical of the Gotaverken design as lacking and insufficient in handling material coming out of the cyclones during the cleaning operation, that there was no design provision for safely routing hot material and protecting the personnel that might be in the area, and that the operating and maintenance instructions provided by Gotaverken were deficient in that they were silent on how to handle plugged cyclones. (Clark Deposition 33:16-25 attached as Exhibit "B" to the Carruth Dec.)

Finally, Plaintiffs' argument is irrelevant. Gotaverken is not a party to this action. Therefore, if the design of the plant is shown to be defective by way of expert witness testimony, it does not matter who designed the plant or who issued the plant's maintenance instructions. If Dr. Clark cannot testify regarding Gotaverken specifically, he should still be allowed to provide his opinion regarding the design of the plant in general because the design is a significant issue of fault, regardless of who was responsible for it.

**2.     Dr. Olson is Qualified to Render an Opinion Regarding Causation and Fault.**

Contrary to Plaintiffs' assertion, Dr. Olson is more than qualified to render an opinion on causation of the subject accident in this matter and liability arising from same. Dr. Olson opined in his sixth opinion that "AES was in overall control of the cyclone clearing operation at their facility, including NORTH AMERICAN clearing operation and firefighting activities after the

10

OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE EXPERT OPINION TESTIMONY BY KIMBLE J. CLARK, JOHN P. MOLDESTAD, AND DOUGLAS OLSON

blast." Plaintiffs claim that this opinion fails to state any basis or reason as required by Rule 26. In his tenth and eleventh opinions, Dr. Olson states that NORTH AMERICAN was not the cause of Brian Hall's injury. Plaintiff also claims that Dr. Olson's first and fourteenth opinion "stop short" of saying that NORTH AMERICAN did nothing wrong on the day of the accident. Plaintiffs claim that Dr. Olson was not asked to look at the OSHA safety orders and he did not identify and review California rules and regulations. Thus, Plaintiffs claim that Dr. Olsen cannot provide his opinion on fault. Lastly Plaintiffs claim that Dr. Olson's opinion that AES was in overall control is contrary to law and inadmissible under Elsner, but provides no analysis regarding same. Overall, Plaintiffs claim that Dr. Olson's testimony should not be admitted because the factors regarding causation set forth in Dr. Olson's report only relate to AES or Plaintiff Brian Hall's actions on the day of the accident and there were no criticisms nor any mention of NORTH AMERICAN'S activities.

Plaintiff failed to address Dr. Olson's extensive qualifications including the fact that he manages the explosion testing operations, laboratory chemical hazards and materials engineering at Baker Engineering and Risk Consultants. (See Dr. Olson's Resume attached to his written report attached as Exhibit "C" to the Carruth Dec.) He has also performed accident investigations and explosion consequence analysis. (Ibid.) Dr. Olson's expertise include explosives and combustion chemistry, explosion accident investigation and experimental hazards testing. (Ibid.) Given such, Dr. Olson is more than qualified to render an opinion on causation and fault in this matter.

It is undisputed that Dr. Olson is familiar with many of the rules and regulations handling explosives and that there are federal, state, and local rules applicable to same. (Olson Deposition at 7:17-22, 11:18-21 attached as Exhibit "D" to the Carruth Dec.) What Plaintiff fails to point out is that Dr. Olson testified that he took these rules into consideration in developing opinions

11

**OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE EXPERT OPINION TESTIMONY BY KIMBLE J. CLARK, JOHN P. MOLDESTAD, AND DOUGLAS OLSON**

regarding what NORTH AMERICAN did on the day of the accident. He simply stated that the rules were not the only thing that he considered. (Id. at 12:20-13:4) He testified that he used his expertise as well in forming his opinions, which is completely acceptable. (Id. at 13:6-13)

In regards to the OSHA standards, Dr. Olson testified that he was not asked to look into said standards and that John Moldestad is much more familiar with same. (Olson Deposition at 17:18-23 attached as Exhibit "D" to the Carruth Dec.) This statement in no way shows that Dr. Olson is not qualified to render an opinion in this matter based upon the regulations that he did consider and based upon his expertise in the field. Dr. Olson testified that he has greater experience with the actual handling of explosives and performing explosives and writing explosive safety procedures and Dr. Moldestad is more familiar with the California regulations and requirements and whether a party violated same. (Id. at 18:2-8) Therefore, Plaintiffs' Motion in Limine should be denied.

3.  **Dr. Moldestad Is Qualified To Render An Opinion Regarding The Proximate Cause of Plaintiff Brian Hall's Injuries.**

Plaintiffs claim that Dr. Moldestad is not qualified to render an opinion regarding the proximate cause of Mr. Hall's injuries (opinion number one), NORTH AMERICAN having "little if anything" to do with the accident and that the evidence indicating that Mr. Hall's location and what he was wearing was the most probable direct cause (opinion number two.) Although Dr. Moldestad thoroughly reviewed Title 8 to see if AES complied with the safety orders, Plaintiffs claim that since he did not look at the safety orders in Group 18 pertaining to use and handling of explosives, his testimony should be excluded.

Again, Plaintiffs fail to set forth Dr. Moldestad's extensive qualifications to render an opinion in this matter as set forth in his written report attached as Exhibit "E" to the Carruth Dec. Also, Plaintiff conveniently failed to mention all of the regulations thoroughly considered by Dr. Moldestad in developing his opinions as contained in page 2 through 5 of his report under

12

**OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE EXPERT OPINION TESTIMONY BY KIMBLE J. CLARK, JOHN P. MOLDESTAD, AND DOUGLAS OLSON**

"Information Considered in Forming Opinions. (Id.) Plaintiffs also failed to point out that Dr. Moldestad testified that he took the minimum requirements that California has, which is Title 8, and used that as his guideline. (Moldestad Deposition at 36:20-25 attached as Exhibit "F" to the Carruth Dec.) He also went though various other sections to determine what AES was required to do by law. (Id. at 37:1-7; 40:11-16) His opinion was that the use of explosives under title 18 was not relevant due to the fact that said explosives were not the contributing or causal factor of the accident. (Id. at 42:3-12) He did, in fact, look at the requirements imposed upon NORTH AMERICAN and determined that none were relevant to Brian Hall's burns. (Id. at 43:13-24) By reviewing Title 8, he opined that the controlling entity, here AES called the shots. (Id. at 49:8-25; 64:16-65:4)

4.  **North American's Experts Are Qualified To Opine That Brian Hall Was Not Wearing The Proper Protective Gear At The Time Of The Accident.**

Plaintiffs claim that all of the experts set forth above should be prevented from identifying any specific injury that would have been sustained by Plaintiff Brian Hall had he been wearing the appropriate protective gear.

First, none of the experts retained by NORTH AMERICAN plan on testifying regarding what specific injuries Brain Hall would have sustained had he worn the proper protective gear. However, given their qualifications set forth above, NORTH AMERICAN'S experts are qualified to testify about the fact that Plaintiff's injuries would have been prevented or minimized had he been wearing the proper attire. Said experts should also be able to testify about the fact that AES' dress code was inappropriate given the nature of the plant.

## II.

## CONCLUSION

For all of the foregoing reasons, NORTH AMERICAN respectfully requests that the Court deny Plaintiffs' Motion in Limine.

13

**OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE EXPERT OPINION TESTIMONY BY KIMBLE J. CLARK, JOHN P. MOLDESTAD, AND DOUGLAS OLSON**

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
5 River Park Place East
Fresno, CA 93720-1501

| | | |
|---|---|---|
| Dated: October 15, 2007 | | McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP |
| | By: | /s/ Lowell T. Carruth |
| | | Lowell T. Carruth |
| | | Devon R. Darrow |
| | | Attorneys for Defendant, Third-party Plaintiff and Counter-defendant NORTH AMERICAN INDUSTRIAL SERVICES, INC. (sued herein as NORTH AMERICAN INDUSTRIAL SERVICES, INC., and NORTH AMERICAN SERVICES GROUP) |

03664/00128-1147218.v1

**OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE EXPERT OPINION TESTIMONY BY KIMBLE J. CLARK, JOHN P. MOLDESTAD, AND DOUGLAS OLSON**