EXHIBIT D

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN N. HALL;<br>JEAN M. HALL;<br><br>      Plaintiffs,<br><br>vs.<br><br>NORTH AMERICAN INDUSTRIAL<br>SERVICES, INC.; NORTH<br>AMERICAN SERVICES GROUP;<br>DOE 1 THROUGH DOE 100,<br><br>      Defendants. | ) NO. 1:06-CV-00123-AWI-SMS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

ORAL DEPOSITION OF

DOUGLAS B. OLSON, Ph.D.

AUGUST 3, 2007

    ORAL DEPOSITION OF DOUGLAS B. OLSON, Ph.D., produced as a witness at the instance of the Plaintiffs and duly sworn, was taken in the above-styled and numbered cause on the 3rd day of August, 2007, from 8:56 a.m. to 1:06 p.m., before Jennifer Pancratz, Certified Shorthand Reporter in and for the State of Texas, reported by computerized stenotype machine at the location of Legacy Office Centers, 8000 IH 10 West, Suite 1500, San Antonio, Texas, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

Hall Vs. North American Industrial Services DOUGLAS B. OLSON, PH.D.    8/3/2007
Case 1:06-cv-00123-OWW-SMS   Document 138-4   Filed 10/15/07   Page 3 of 9

Page 4

1         DOUGLAS B. OLSON, Ph.D.,
2    having been first duly sworn, testified as follows:
3                      EXAMINATION
4    BY MR. SEILER:
5         Q.   State your full name, please.
6         A.   Douglas Bernard Olson.
7         Q.   What is your business or occupation?
8         A.   I'm trained as a chemist. I work for Wilford --
9    for Baker Engineering and Risk Consultants. My position
10   there is manager of the testing operations.
11        Q.   Have you brought a current resume with you today?
12        A.   I have.
13        Q.   Did you also make a report in this case?
14        A.   I did.
15        Q.   I'd ask you to get both of those out here --
16        A.   Okay.
17        Q.   -- for us, if you will.
18             All right. You've just handed me several
19   pages here. Does this entire package that you've handed
20   me constitute your current resume?
21        A.   The first page is a one-page bio, and the other
22   is a list of publications.
23        Q.   Okay. I'm going to call the combined package
24   that you've given me Exhibit 1 to your deposition.
25             And second, you have a folder there with a

1  Q. Okay. And do you feel that you have to be aware
2  of those rules and follow those rules when you do managing
3  of explosive testing operations?
4  A. Yes.
5  Q. Do you have someone, a subordinate or a superior,
6  either way, who actually has the hands-on responsibility
7  for knowing and complying with such regulations?
8  A. Well, there are -- there would be several people
9  who would have expertise in the area. I have coworkers
10 who are more expert than I am in storage requirements and
11 the rules and regulations for building magazines, which we
12 do for clients, the blasting operation, the
13 transportation.
14        There's a lot of rules, and between the
15 license -- the person with the license and me and my
16 coworkers, we cover those regulations. I don't -- you
17 know, I don't memorize them all. You have to read them
18 very carefully sometimes to determine an answer to a
19 question.
20 Q. All right. Well, sometimes, you know, when
21 people give opinions, I mean, we can all give opinions
22 about things. And what I'm trying to investigate here is
23 when you state certain opinions in this case concerning
24 what, for example, NAIS did under certain circumstances,
25 are you expressing that opinion based on the knowledge of

1  what the pertinent rules and regulations were and whether
2  or not they complied with those rules and regulations?
3      A.   I am aware of the -- of the rules and am taking
4  that into consideration.  It's not the only consideration
5  for most of the questions that have come up in this case.
6      Q.   Okay.  Well, I'm just -- I mean, jurors have
7  certain common sense that they can apply to facts, and
8  they can form opinions about what people did.  So I'm
9  assuming from what you're telling me that you're bringing
10 to bear some expertise here beyond what an ordinary lay
11 juror might have as far as what blasters are supposed to
12 do.  Is that fair?
13     A.   That's fair to say.
14     Q.   Okay.  Have you done any or participated in any
15 way in any blasting in California?
16     A.   I have not performed any blasting in California.
17 I have investigated other -- another blasting accident in
18 California.
19     Q.   And when and where was that?
20     A.   It was at a dam construction site north of San
21 Diego.  I believe it was called ~~Bolivi (phonetic)~~ Oliver hair. -- I
22 can't remember the name of that dam exactly.  Constructed
23 basically as part of the water supply of San Diego.  And
24 when was that?  I can't be sure.  2002 or so.
25     Q.   Was someone injured?

Case 1:06-cv-00123-OWW-SMS   Document 138-4   Filed 10/15/07   Page 6 of 9

Hall vs. North American Industrial Services   DOUGLAS B. OLSON, PH.D.   8/3/2007

Page 7

1    Q.   And do you understand that there are certain
2  rules and regulations and procedures that apply to people
3  who engage in the use and handling of explosives?
4    A.   I do.
5    Q.   Did any of your training up through your PhD
6  involve studying those rules and regulations?
7    A.   No, not at that time.
8    Q.   All right.  Now, the first line after your
9  degrees on Exhibit 1 says that Dr. Douglas Olson manages
10 the explosive testing operations, among other things, at
11 Baker Engineering.
12   A.   Yes, sir.
13   Q.   Have I read that correctly, to the extent that I
14 did read it?
15   A.   You didn't read it completely, but that's
16 essentially what it says.
17   Q.   All right.  And is it necessary in the course of
18 that work for you to be acquainted with the rules,
19 regulations pertaining to the use and handling of
20 explosives?
21   A.   I am familiar with many of the rules and
22 regulations of handling explosives.
23   Q.   Who -- what -- when you say here on your resume
24 that you manage the explosive testing operations, what do
25 you do, actually?

1   your resume, where you manage explosive testing. Are the
2   explosions somehow contained so that there is no threat of
3   anybody being hit by flying particles, for example?
4       A.   Well, let me break that question up. No, they're
5   not always contained, but no, we wouldn't execute a test
6   where we thought someone was exposed to being hit by
7   flying material.
8       Q.   Okay. Well, I'm just trying to get a general
9   understanding here of when you do explosive testing, is
10  the purpose of that to -- is one of the purposes of that
11  to investigate the characteristics of a particular
12  explosive, for example?
13      A.   It could be that, yes.
14      Q.   Is it sometimes to also effect and a result -- or
15  to effect a result such as cleaning a boiler or something?
16      A.   It could be -- it could be that too, yes.
17      Q.   Could be either one, all right.
18           You understand that there are federal and
19  state and local rules and regulations that apply to
20  blasting operations in general?
21      A.   Yes, I do.
22      Q.   And getting back then to my earlier question, do
23  those rules apply generally to what you do as a manager of
24  explosive testing operations?
25      A.   Yes, they do.

Case 1:06-cv-00123-OWW-SMS   Document 138-4   Filed 10/15/07   Page 8 of 9
Hall vs. North American Industrial Services   DOUGLAS B. OLSON, PH.D.   8/3/2007

Page 17

 1     A.    Yes.

 2     Q.    And do you know whether, under the federal OSHA

 3  regulations, there are any regulations pertaining to use

 4  and handling of explosives?

 5     A.    Would you repeat that, please.

 6     Q.    Do the federal OSHA regulations apply to use and

 7  handling of explosives?

 8     A.    The federal OSHA regulations, yes, they would in

 9  general.  Now, some states, the state OSHA basically --

10  no, I -- let me retract that.  I believe the federal

11  regulations would apply in handling of explosives.

12     Q.    Okay.  That's a somewhat technical legal

13  question, and I don't expect you to have the answer to it,

14  but I mean, as far as your understanding, do California

15  OSHA provisions also apply to use and handling of

16  explosives?

17     A.    I would expect them to, yes.

18     Q.    Okay.  Would it be fair to say that you're not

19  prepared to give a legal analysis of whose are primary,

20  whether the federal or the state OSHA regulations?

21     A.    I was not asked to look into that, and I haven't

22  done that.  Jon Moldestad in this case is much more

23  familiar with the state Cal/OSHA regulations than I am.

24     Q.    Do you have an understanding of the difference in

25  perspective that you bring to this case versus what

Case 1:06-cv-00123-OWW-SMS   Document 138-4   Filed 10/15/07   Page 9 of 9
Hall vs. North American Industrial Services    DOUGLAS B. OLSON, PH.D.    8/3/2007

Page 18

1  Mr. Moldestad does?

2      A.   Well, Mr. Moldestad I don't believe has great
3  experience with actual handling of explosives and
4  performing explosives and writing explosive safety
5  procedures, SOPs.  He's from -- and I don't know him very
6  well, but he's much more familiar with the California
7  regulations and requirements and what would be a violation
8  of those than I am.

9      Q.   Are you involved in writing safety procedures --
10     A.   Yes.
11     Q.   -- for --

12          And how does that come about?  Where do you
13  get involved in doing that?

14     A.   Well, every field test at my company requires
15  what's called an SOP or a safe operating procedure.  So a
16  safety procedure is written, usually by the engineer,
17  drafted by the engineer, which explains the
18  responsibilities, the scope, the hazards, the PPE, the
19  procedures, the abort procedures.  You know, it's a
20  complete document that -- to show what could happen and
21  what to do about it.  That comes to me as testing manager,
22  and I review it.  And when I'm satisfied with it, it's
23  signed off by the president of the company.

24     Q.   Is it part of your function in doing what you
25  just said to compare what's been presented to you with any