\

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BRIAN N. HALL and JEAN M. HALL, ) | 1:06-cv-0123 OWW SMS | |
| ) | | |
| Plaintiffs, ) | MEMORANDUM DECISION AND | |
| ) | ORDER RE: JUDGMENT | |
| v. ) | | |
| ) | | |
| NORTH AMERICAN INDUSTRIAL ) | | |
| SERVICES, INC., ) | | |
| ) | | |
| Defendant. ) | | |
| ) | | |

This case brought by Plaintiffs Brian N. Hall and Jean Hall against Defendant North American Industrial Services, Inc. ("NAIS") came on regularly for trial on October 30, 2007, in Courtroom 3 of the above-entitled court, before United States District Judge Oliver W. Wanger. A jury of eight persons was duly empaneled and sworn. Witnesses were called, sworn and testified. After hearing the evidence, the jury was duly instructed on the law by the Court. After arguments of counsel, the case was submitted to the jury. The jury deliberated and returned a verdict in favor of Plaintiff Brian Hall in the amount of $7,264,746.20 in economic damages and $20 million in noneconomic damages. (Doc. 230.) It also returned a verdict in

1

favor of Plaintiff Jean Hall for loss of consortium in the amount of $250,000.  The jury apportioned fault as follows: 5 percent Brian Hall, 20 percent AES Mendota (Brian's employer), and 75 percent NAIS.

Plaintiff filed their proposed judgment on November 27, 2007, proposing a total award of $19,838,608 for Brian Hall and $187,500 for Jean Hall.  (Doc. 229.)  Plaintiffs' proposed total award for Brian Hall is comprised of $5,288,476 in economic damages (adjusted downward to account for Brian Hall's 5 percent share of fault and to account for his actual medical expenses) and $15,000,000 in noneconomic damages, less the amount Plaintiffs attributed to the offset for workers' compensation benefits, which is $449,868.  Plaintiffs' proposed total award of $187,500 for Jean Hall represents 75 percent of the total jury award of $250,000 to reflect NAIS's comparative share of liability.

Defendant NAIS filed its proposed judgment on November 30, 2007, specifying a total award of $19,049,981 for Brian Hall and $187,500 for Jean Hall.  (Doc. 235.)  Defendant's proposed award for Brian Hall is comprised of $5,288,476 in economic damages (also adjusted downward to account for Brian Hall's 5 percent share of fault and to account for actual medical expenses) and $15,000,000 in noneconomic damages, less the full amount of Hall's workers' compensation benefits of $1,238,495.  The dispute here concerns the method of calculating and applying the workers' compensation benefit offset.

Proposition 51, Civil Code §§ 1431.1–1431.5, enacted in 1986, provides in part:

2

> "[e]ach defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount."

The California Supreme Court held in *DaFonte v. Up-Right, Inc.*, 2 Cal.4th 593, 596 (1992), that Proposition 51 "eliminates a third party defendant's joint and several liability to an injured employee for unpaid noneconomic damages attributable to the fault of the employer, who is statutorily immune from suit." The court stated that Proposition 51 "retains the joint liability of all tortfeasors, regardless of their respective shares of fault, with respect to all objectively provable expenses and monetary losses. On the other hand, the more intangible and subjective categories of damage were limited by proposition 51 to a rule of strict proportionate liability." *DaFonte*, 2 Cal.4th at 600.

*Witt v. Jackson,* 57 Cal.2d 57 (1961), and its progeny established the rule that where there is a concurrently negligent employer, a third party Defendant can have its judgment offset by the amount paid in workers' compensation benefits. But these cases were decided well before the enactment of Proposition 51 and did not take into account the elimination of joint and several liability for noneconomic damages. The California Supreme Court has not addressed the question of how to allocate the workers' compensation offset after Proposition 51.

In calculating their proposed judgment, Plaintiffs rely on *Scalice v. Performance Cleaning Systems,* 50 Cal.App.4th 221 (1996), and *Torres v. Xomox Corp.,* 49 Cal.App.4th 1 (1996). To determine the amount of workers' compensation benefits to apply

3

as an offset to a third party's liability, these California Courts of Appeal cases first determine the ratio of economic damages to total damages the jury awarded and then apply that ratio to the total workers' compensation figure.  The resulting amount is that portion of the total workers' compensation benefits attributable to economic damages, which represents the offset figure.  This figure is then deducted from the total economic damages to result in the total joint and several judgment for economic damages against a third party tortfeasor.

Defendant argues that this calculation is incorrect and that 100% of the total workers' compensation benefits paid to Hall should apply to offset the economic damages total, because these benefits are properly characterized as economic losses since they represent medical expenses and temporary disability payments. Defendant cites *Hernandez v. Badger Constr. Equipment Co.*, 28 Cal.App.4th 1791 (1994), and *Poire v. C.L. Peck/Jones Brothers Constr. Corp., Inc.,* 39 Cal.App.4th 1832 (1995), in support of this assertion.  In both cases, the respective courts upheld the trial court's offset of economic damages by the full amount of workers' compensation benefits paid and did not apportion or reduce the benefits.  In neither case was the calculation of the workers' compensation benefit offset at issue, nor was the calculation of the offset analyzed.  Neither decision explains the rationale for such an offset allocation.

*Scalice* and *Torres* found that workers' compensation benefits cannot be properly characterized solely as economic damages. Although they consist of monetary amounts, workers' compensation benefits do not directly correspond to the economic damages

4

available in tort.  *Scalice*, 50 Cal.App.4th at 229-30; *Torres*, 49 Cal.App.4th at 31 ("The benefits of [the workers' compensation] law are not provided as an indemnity for negligent acts committed or as compensation for legal damages sustained, but as an economic insurance measure.  Thus the analogies of the common law cannot be applied too closely to the workers' compensation scheme.")  Rather, these benefits take into consideration intangible, subjective items like pain and, in some instances, penalties.  *Id*. at 229.  Their account of lost earnings is also different.  Workers' compensation law does not attempt to determine actual wages lost to an employee but rather calculates earnings through a series of statutory formulas that establish floors and ceilings for such computations.  *Id*.  Accordingly, *Scalice* treats workers' compensation benefits in the nature of a statutory settlement, noting the workers' compensation system is a "substitute for bringing an action against an employer, and the benefits paid are akin to a compromise payment made to avoid litigation."  *Id*. at 232.

    This reasoning is persuasive.  Workers' compensation benefits do not fit neatly into either category of economic or noneconomic damages.  Nor are they intended to be the same as such damages, because they reflect a fundamental social compromise enacted by the California Legislature "which include the same intangibles as do many other types of settlement."  *Scalice*, 50 Cal.App.4th at 232.

    *Scalice* and *Torres* calculated the offset by:  1) determining economic damages as a percent of total damages awarded, and 2) applying that percentage to the total workers' compensation

benefits to get the amount of these benefits attributable to "economic damages". Here economic damages represent 21.7736 percent of the total damages, which is computed by dividing $5,288,476 in economic damages by $24,288,476 in total damages awarded, after reduction for the 50% comparative fault of the Plaintiff. Applying this percentage to the $1,238,495 in total workers' compensation paid, the amount of the offset is $269,664.94. Net economic damages after the workers' compensation offset is applied total $5,018,811.

Adding economic damages of $5,018,811 to net noneconomic damages of $15,000,000, results in a total judgment of $20,018,811 for Plaintiff Brian Hall.

## CONCLUSION

For the reasons stated above, the net judgment for Plaintiff Brian N. Hall shall be entered in the amount of $20,018,811.00.

IT IS SO ORDERED.

Dated:   December 11, 2007            /s/ Oliver W. Wanger
                                     UNITED STATES DISTRICT JUDGE